GEORGE A. NASH and others *vs.* THOMAS LOWRY and others.

July 25, 1887.

**Municipal Corporations—Street Railway—Franchise—Corporation.—** The common council of St. Paul, by ordinance, granted in terms the right to lay street-railway tracks in any or all the streets of the city, (with certain exceptions.) Subsequently the legislature "confirmed and validated" the ordinance. *Held*, that it is immaterial to the validity of the grant whether the parties to whom the right was granted constituted a corporation, or only a partnership.

**Same—Confirmation of Ordinance by Act of Legislature.—***Also*, that the grant is a contract; and, while the council could not make such contract without the explicit consent of the legislature, it became binding upon the city as soon as the legislature "confirmed and validated" the ordinance; so that thereafter the council could not rescind or revoke the right so granted.

The plaintiffs, who are the owners of land fronting on Pleasant avenue in the city of St. Paul, brought this action in the district court for Ramsey county, to restrain the St. Paul City Railway Company and the other defendants, who are its officers and agents, from laying and operating a street railway on Pleasant avenue. The answer set out the ordinances of the city of St. Paul and the acts of the legislature referred to in the opinion, and alleged that the defendants were about to lay and operate the street railway in pursuance thereof. The reply set out the ordinance of the city of St. Paul revoking, in terms, all authority to lay a railway track on Pleasant avenue. An issue was made by the pleadings as to whether the St. Paul City Railway

Company is a corporation.   After full argument, judgment upon the pleadings in favor of the defendants was granted by *Wilkin, Brill* and *Simons*, JJ.   From this judgment plaintiffs appeal.

   *J. M. Gilman* and *C. J. Thompson*, for appellants.

   *J. M. Shaw* and *H. J. Horn*, for respondents.

   GILFILLAN, C. J.[1]   The argument in this case covered a great deal more ground than is necessary to go over in order to arrive at a correct decision upon it.   The facts, so far as are necessary to present the merits, are these:   January 8, 1872, the common council of the city of St. Paul passed an ordinance in terms granting to certain persons in it named, or such of them as should accept and comply with the terms thereof, together with such other persons as should thereafter become associated with them, and to their heirs, executors, administrators, successors, and assigns, permission and authority and consent of said council to lay a line of railway, with single or double track, with all necessary or convenient tracks for turn-outs and side-tracks and switches, in any or all of the streets of said city, with certain exceptions and restrictions not necessary to be here noted; the carriages or cars thereon to be propelled by none other than animal power.   More than two-thirds of the persons named in the ordinance duly accepted it.   An act of the legislature in February of that year, (Sp. Laws, 1872, c. 112,) assumed to declare the persons so accepting, with some others, a corporation under the name of the "St. Paul Street-Railway Company," and to confirm and vest in said corporation the rights specified in said ordinance.   The persons named in the act, or a majority of them, organized under it, and thereafter assumed to be and did business as a corporation under said act by said name, and exercised the rights specified in said ordinance.   In 1877 a mortgage upon all its franchises and other property, executed by said St. Paul Street-Railway Company, was foreclosed by action, and the mortgaged property sold, and in October of that year the purchaser at the foreclosure sale, with others, assumed to organize, under Laws 1876, c. 30, as a corporation by the name of the "Saint Paul City Railway Company," and in October, 1878, the district court, in:

---

[1] Berry, J., because of illness, took no part in this case.

which such foreclosure was had, by its final decree vested the title to the franchises and property mortgaged and sold in the Saint Paul City Railway Company, and said purchaser also conveyed said property to it. February 8, 1882, the common council passed an ordinance which in terms granted, confirmed, and continued to and in the Saint Paul City Railway Company the rights, privileges, and franchises granted and specified in said prior ordinance. By Sp. Laws 1883, *c.* 297, the legislature "confirmed and validated" the ordinance passed February 8, 1882. Afterwards, before the commencement of this action, and before said railway company had laid any railway tracks on Pleasant avenue or Oak street, between Sixth and Ramsey streets, in said city, but as it was about to lay tracks on Pleasant avenue, the common council passed an ordinance in these words: "That any and all authority heretofore granted by ordinance to any person or persons, company or corporation, to lay a railway track on Pleasant avenue or Oak street between Sixth and Ramsey streets, be, and the same is hereby, revoked and repealed."

The question in the case is, did the "Saint Paul City Railway Company" acquire, and does it still have, so far as individuals are concerned, the right to lay its tracks on Pleasant avenue and on Oak street, between Sixth and Ramsey streets? As held by the court below, it is immaterial to this question that said company is or is not a corporation; for, if not a corporation, it is a joint-stock association or partnership; and in either character it is capable of contracting for, acquiring, and holding rights such as the ordinance first referred to assumed to vest. There is nothing in such rights requiring for their acquisition and enjoyment the possession of corporate franchises. And also, as held by the court below, the grant by the ordinance is in the nature of a contract; and, if valid as to the city, the common council could not rescind it. The ordinance, when passed, was invalid as an irrevocable contract; for it is undoubtedly the rule, in accordance both with principle and authority, that a municipal corporation, intrusted with power of control over public streets, cannot, by contract or otherwise, irrevocably surrender any part of such power without the explicit consent of the legislature, because such power is in the nature of a trust held by the corporation for the state. Cooley,

Const. Lim. 252; 1 Dill. Mun. Corp. §§ 715, 716, and cases cited. But, when the ordinance was "confirmed and validated" by the act of 1883, it became as valid and binding as though, when passed, the council had express authority to pass it. From that time the power of the council to recall the rights granted, ceased.

The power to revoke is not to be assumed from the general grant of power to the council in the revised city charter of 1874, (Sp. Laws 1874, c. 1, subc. 4, § 11, p. 39,) "to grant the right of way upon, over, and through any of the public streets, highways, alleys, public grounds, or levees of said city to any steam-railway or horse-railway company or corporation, upon such limitations and conditions as they may prescribe by ordinance." The question here is not whether the council may grant to other companies the right of way along the streets, but whether it can recall the right granted to this company. The general terms of the charter are not sufficient to express an intent on the part of the legislature to authorize its revocation by the council.

Judgment affirmed.

