(Opinion published 51 N. W. Rep. 1051.)

---

CHARLES A. LONG *vs.* CITY OF DULUTH *et al.*

Argued Dec. 22, 1891.   Decided April 8, 1892.

**Municipal Charter of Duluth Construed.**—Legislative authority to a municipal corporation to provide a system of waterworks, to grant the right to a private corporation to establish such a system, and to supply the municipality with water, and to contract therefor, does not confer upon the municipality the power to grant an *exclusive* franchise, so as to disable the municipal corporation, for the period of thirty years, from itself establishing waterworks and a system of supply. Such grants or delegation of authority are to be strictly construed.

Appeal by plaintiff, Charles A. Long, from an order of the District Court of St. Louis county, *Stearns,* J., made September 28, 1891, sustaining a demurrer to the complaint.

This action was commenced by Louis H. Grieser, a resident and taxpayer of the City of Duluth, against the city and its Mayor, Treasurer, Comptroller, and Clerk, to enjoin it and them from executing or issuing its bonds for $800,000. The city was about to issue this amount of its bonds to raise money for the construction of water and gas works to supply the city and its inhabitants with water and gas. The defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained. Afterwards Charles A. Long, another resident and taxpayer of Duluth, was substituted as plaintiff in the place of Grieser, and appealed to this court from the order sustaining the demurrer.

The complaint set forth that the city is the legal successor of the Village of Duluth, and bound by its contracts; that the village was organized by and under Sp. Laws 1881, ch. 11; that this Act was amended by Sp. Laws 1883, ch. 80; that the village embraced a large part of the territory and all the principal business and residence portions of what is now the city; that in 1883 the village, acting under the authority of the Special Laws above mentioned, entered into a contract (by an ordinance) with the Duluth Gas & Water Company, a corporation, whereby the city granted to that corporation the exclusive privilege for thirty years of supplying the village and its successor, the city, and the inhabitants thereof, with water, and agreed that the village and its successors would abstain for that length of time from erecting any water plant for supplying itself or the inhabitants with water. The complaint set out the Special Law and the Ordinance, which, so far as material, were as follows:

## SP. LAWS 1883, CH. 80.

*Sec. 3.* That subdivision *eleventh*, (11th) of section one (1) of chapter five (5) of said Act [to define the boundaries of and establish a municipal government for the Village of Duluth] be, and the same is hereby, amended so as to read as follows:

*Eleventh*—1. To make and establish public pounds, pumps, wells, cisterns, hydrants, reservoirs and fountains, and to provide for and conduct water into and through the streets, avenues, alleys and pub-

lic grounds of the Village and City of Duluth, and to provide for and control .the erection of waterworks by said village for the supply of water to said village and its inhabitants, and to grant the right to one or more private companies or corporations to erect waterworks to supply said village, and the inhabitants thereof, with water, and to authorize and empower such company or corporation to lay water pipes and mains into, through and under the streets, avenues, alleys and public grounds of the said Village and City of Duluth, and, when necessary for properly carrying out the purpose of said company or corporation, to appropriate private property in the Village or City of Duluth to the use of said company or corporation in the manner provided by section twenty-nine (29) of chapter seven (7) of said act, and to control the erection and operation of such waterworks, and the laying of such pipes and mains, in accordance with such terms and conditions as may be agreed upon with said company or corporation.

4. *Provided,* that every grant to a private company or corporation of the right to erect waterworks, gasworks, electric light works or heating works, as hereinbefore mentioned, shall provide for the sale of such works to the said village or its successors at any time after fifteen (15) years from the commencement of such grant, at a valuation to be agreed upon or determined in a manner to be prescribed in the grant.

ORDINANCE.

*Section 1.* In consideration of the benefits that will result to the Village of Duluth and its inhabitants, from the erection and operation of gas and water works, there is hereby granted to the Duluth Gas and Water Company, a corporation duly organized and existing under the laws of the State of Minnesota, and to its successors and assigns, the privilege of establishing, maintaining and operating gas and water works and the construction of pipe lines, open or closed standpipes, reservoirs, conduits, gas holders, necessary and sufficient in size; also the laying of mains, pipes, and the placing of fire hydrants and lamp-posts in and along the streets, avenues, alleys and public grounds of the Village and City of Duluth, County of St. Louis, and State of Minnesota, as the same now exist or may hereafter be extended, for the supply of gas or water suitable for domestic and

other purposes; for the term of thirty (30) years from and after the passage of this ordinance. The said Village of Duluth shall and will abstain for the period of said thirty (30) years from and after the passage of this ordinance from granting to any party or parties other than the said Duluth Gas and Water Company, its successors or assigns, the right or privilege to lay water pipes in any of the streets, avenues, alleys, public grounds or sidewalks, or furnish water to said village or its inhabitants, or any portion thereof, and said village will also abstain for a period of five (5) years from and after the passage of this ordinance from granting to any party or parties, other than the Duluth Gas and Water Company, the right or privilege to lay gas pipes in any of the streets, avenues, alleys and public grounds or sidewalks, or furnish gas to said village or its inhabitants or any portion thereof, and the said village will likewise abstain from so doing for and on its own behalf: provided, however, that at the expiration of said thirty (30) years, should the village refuse to grant to the said Gas and Water Company, its successors or assigns, the right to continue and maintain said works for another term of twenty (20) years in and upon the public grounds and streets of the said village, and to supply the said village and the inhabitants thereof with gas and water at reasonable terms, then and in such case the village shall purchase from said Gas and Water Company, its successors or assigns, said gasworks or waterworks, or either of them, and the property connected therewith, at a fair valuation.

It was further stated in the complaint that the City of Duluth had held a special election in August, 1891, under Sp. Laws 1891, ch. 55, § 35, at which the question of issuing these bonds had been submitted to the legal voters, and a majority of the votes cast were in favor of the issue; that the common council of the city, on September 21, 1891, duly enacted and passed an ordinance authorizing and directing the Mayor, Comptroller, Treasurer and Clerk to issue water and light bonds of the city to the amount of $800,000, and to sell them and hold the money as a fund for the erection of water and gas plants; and that, unless restrained, they will do so, and plaintiff and all other taxpayers will be compelled to pay large taxes annually to

keep down the interest on the bonds and provide a sinking fund for their final payment. The complaint further stated that, by reason of the contract made (by ordinance) in 1883 with the Duluth Gas & Water Company, the city could not rightfully erect a water plant or supply itself or its inhabitants with water for thirty years, and would be enjoined from doing so by that corporation if work thereon should be commenced.

The trial court, by memoranda filed with its order sustaining the demurrer, grounded its decision upon the language of the ordinance. It held that the words therein that "the village will likewise abstain from so doing for and on its own behalf" did not apply to water-works.

In this court the City of Duluth, by its counsel, expressly waived all question whether an injunction will ordinarily be issued at the suit of a mere taxpayer to restrain his city from issuing bonds, and also waived all other questions except those arising upon the construction of Sp. Laws 1883, ch. 80, and the city ordinance of 1883.

This law and ordinance were in this court for consideration in *City of Duluth* v. *Duluth Gas & Water Co.*, 45 Minn. 210.

*Warner & Spangler*, for appellant.

The City of Duluth was organized by Sp. Laws 1887, ch. 2. It succeeded the Village of Duluth, and, by the act creating it, assumed the obligations, and was bound by the contracts, of the village. A taxpaying property holder may maintain this action in his own name. *Hodgman* v. *Chicago & St. P. Ry. Co.*, 20 Minn. 48, (Gil. 36;) *Sinclair* v. *Board County Com'rs of Winona Co.*, 23 Minn. 404.

The contract of the City of Duluth with the Duluth Gas & Water Company, granting the exclusive right to that company to erect and operate a gas and water plant for thirty years, was authorized by the grant of authority to the city to provide for and conduct water into and through the streets, avenues, alleys and public grounds of said village; also by the grant of authority to the city to grant the right to one or more private corporations to erect waterworks, and to authorize and empower it or them to lay pipes and mains into, through and under the streets, avenues, alleys and public grounds.

*S. D. Allen,* for respondents.

Under a proper construction of the ordinance in question the City of Duluth does not agree to abstain for a period of thirty years, or for any period, from establishing and operating waterworks to supply itself and its inhabitants with water.

The Common Council of the Village of Duluth was not authorized by statute to enter into an agreement that the village and its successors would abstain from supplying itself and its inhabitants with water for a period of thirty years, or for any period. *Charles River Bridge* v. *Warren Bridge,* 6 Pick. 376, 11 Pet. 420; *Mohawk Bridge Co.* v. *Utica & S. R. Co.,* 6 Paige, 554; *Goszler* v. *Corporation of Georgetown,* 6 Wheat. 593; *Louisville Gas Co.* v. *Citizens' Gas Co.,* 115 U. S. 683; *Nash* v. *Lowry,* 37 Minn. 261.

DICKINSON, J. In the year 1883 the village of Duluth was a municipal corporation, having the powers conferred upon it by Sp. Laws 1881, ch. 11, and the more specific powers (as respects the subject here to be considered) conferred by Sp. Laws 1883, ch. 80. It will only be necessary to direct attention to subdivisions one (1) and four (4) of section three (3) of the latter act.

In the year 1883 the village, by ordinance, entered into a contract with a corporation named the Duluth Gas & Water Company,—but which for brevity we will designate as the "Water Company,"—by the terms of which there was granted to the water company the privilege of establishing, maintaining, and operating waterworks, laying pipes and placing hydrants in the streets and public grounds for the supply of water for domestic and other purposes, for the term of thirty (30) years. The village on its part thereby agreed to abstain for that period from granting to any other party the right or privilege to lay water pipes in the streets or public grounds, or to furnish water to the village or its inhabitants. Then, in the same sentence, after making a similar provision with respect to the laying of gas pipes and the supply of gas, (except that a different period of time is named,) it is added: "And the said village will likewise abstain from so doing for and on its own behalf." It is contended by the appellant that the clause last recited relates, not only to the subject of

gas supply, which immediately precedes it, but also to that of the water supply referred to in the earlier part of the sentence; so that the agreement of the village is, in effect, that it will not, for the period of thirty (30) years, either grant to any other party than this water company the privilege of supplying water and maintaining a system of waterworks, nor itself exercise the right of establishing waterworks or supplying water. We may assume that this is the proper construction of the ordinance; for, if it is not, the plaintiff (appellant) has no reason for this intervention to prevent the municipal corporation from taking steps to establish and maintain a system of waterworks for itself; and, if this is the proper construction of the ordinance, the plaintiff has no cause of action, for reasons which will presently be stated.

The purpose of this action, prosecuted by a taxpayer, is to restrain the present city of Duluth, and its officers, from proceedings already instituted, on the part of the city, for the purpose of establishing, on its own account, a public system of waterworks. The city is the legal successor of the village, and no question is raised as to its being legally bound by the contract made by the village with the water company, and we shall assume that it is so bound. Nor is any question raised as to the right of the plaintiff to prosecute such an action. We have not referred particularly to some features of the complaint relating to the subject of gas, for the reason that it appears that the bonds proposed to be issued are merely for the purpose of raising funds to establish waterworks, and it is not apparent that our inquiry need to be extended beyond that subject. The simple question, then, is whether the municipality became disabled from establishing waterworks for the use of the city and its people by reason of the contract made with the water company, and which, as we assume, in terms provided that the municipal corporation would abstain from doing so for the period of thirty (30) years. In simpler form, the question is whether the village had power to grant an *exclusive* franchise, and thus to disable itself.

The adjudications upon the subject show it to be no longer a matter of doubt that the legislature, acting presumably for the public good and with due regard for the future as well as present inter-

·ests of the state, may grant exclusive franchises like that which are claimed to have been bestowed upon this water company; and when that has been done, and the grant accepted and acted upon, it becomes a contract by which the state is effectually bound, and its future governmental power is thereby impaired. It may be admitted, too, that the legislature may delegate to a municipal corporation the authority, by contract, to confer such exclusive privileges concerning matters properly pertaining to municipal affairs. But it is a well-settled principle of construction, applicable both to direct legislative grants and to those indirectly made through the action of municipal corporations, that exclusive rights of this nature are not favored, and a statute which thus has the effect to impair the power of the legislature for future action should be construed most strongly in favor of the state. If there is any ambiguity or reasonable doubt, arising from the terms used by the legislative or granting body, as to whether an *exclusive* franchise has been conferred, or authorized to be conferred, the doubt is to be resolved against the corporation or individual claiming such a grant. Public policy does not permit an unnecessary inference of authority to make a contract inconsistent with the continuance of the sovereign power and duty to make such laws· as the public welfare may require. *Nash* v. *Lowry*, 37 Minn. 261, 263, (33 N. W. Rep. 787;) *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 543, 544; *Minturn* v. *Larue*, 23 How. 435; *Wright* v. *Nagle*, 101 U. S. 791, 796; and see authorities to be hereafter cited. It is hardly necessary to advert in this connection to the fact that municipal corporations have only such powers as are conferred by the legislature, and the same principle of strict construction which forbids that a direct grant of a ·franchise by the legislature be construed as exclusive is applicable in the construction of powers delegated to municipal corporations with respect to such matters. The authority conferred upon such governmental agencies of the state to grant exclusive franchises or privileges must be as explicit and free from doubt as would be required if the franchise were created directly by the legislature.

Reference to a few of the numerous decisions in which this principle of strict construction has been recognized and applied may

properly precede the application which we make of the law to the facts of this case. It may be that in some of these cases the rule of strict construction was carried too far.

In *Minturn* v. *Larue, supra,* it was considered that a city charter, conferring the power to make such by-laws and ordinances as might be deemed proper for making (establishing) ferries, did not authorize the granting of an *exclusive* privilege.

*Fanning* v. *Gregoire,* 16 How. 524, was the case of a legislative grant of the right to the plaintiff to operate a ferry for twenty (20) years, and it was also declared that "no court or board of county commissioners shall authorize any person, unless as herein provided, to keep a ferry within the limits of the town of Dubuque." The *city* of Dubuque was subsequently created, and the city, in the exercise of its charter powers, granted to the defendant the privilege of operating a ferry. It was held that the earlier grant was not exclusive, and, although "no court or board of county commissioners" could subsequently grant another franchise, the *legislature* could do it, or empower the city of Dubuque to do so.

*Richmond Co. Gas-Light Co.* v. *Town of Middletown,* 59 N. Y. 228. A legislative act authorizing a town to cause its streets to be lighted with gas, and to enter into a contract with the plaintiff for that purpose, was held not to confer power to make an absolute contract for a term of years. The legislature could not thus be deprived of its power to subsequently legislate upon the subject; and its repeal of the authority to light with gas was effectual to terminate the contract so made. See, also, *Syracuse Water Co.* v. *City of Syracuse,* 116 N. Y. 167, (22 N. E. Rep. 381.)

*City of Brenham* v. *Brenham Water Co.,* 67 Tex. 542, (4 S. W. Rep. 143,) may be thus stated: A city was empowered by its charter to provide itself with water, and was deemed to be authorized to do so by contract. The defendant company was expressly authorized to contract with the city for that purpose. The city entered into a contract with the defendant which the court deemed to have been intended to confer an *exclusive* right upon the company for the period of twenty-five (25) years. It was held that the city had no such power.

*Lehigh Water Company's Appeal*, 102 Pa. St. 515, presented these facts: The water company was incorporated in 1860 to supply the borough of Easton with water. In 1867 the borough was authorized to construct waterworks, and to purchase the works of any existing company. This authority, however, did not become effectual until 1881, when it was approved by popular vote. In the mean time the water company, as it was authorized to do, had availed itself, by acceptance, of the benefits of an act of 1874 providing for the incorporation of water companies, and which declared that "the right to have and enjoy the franchises and privileges of such incorporation within the district or locality covered by its charter shall be an *exclusive* one, and no other company shall be incorporated for that purpose" until the corporation should have realized profits to a specified amount. It was held that the franchise was exclusive only as respects other companies, and that the borough was not prohibited from supplying water by works constructed by itself, even though that might impair the value of the franchise of the water company.

In *Stein* v. *Bienville Water-Supply Co.*, 34 Fed. Rep. 145, it was held that the granting of the exclusive privilege of supplying a city with water "from the Three Mile Creek" did not prevent a subsequent grant of a right to supply water from another source.

It was considered in *Saginaw Gaslight Co.* v. *City of Saginaw*, 28 Fed. Rep. 529, that under authority to a municipal corporation to cause its streets to be lighted, and to make reasonable regulations with reference thereto, the city was empowered to enter into a contract for the accomplishment of that end, but that it had not authority to thus confer an *exclusive* right to furnish gas for the period of thirty (30) years.

See, also, *State* v. *Cincinnati Gaslight & Coke Co.*, 18 Ohio St. 262; *Parkersburg Gas Co.* v. *City of Parkersburg*, 30 W. Va. 435, (4 S. E. Rep. 650;) *Birmingham & Pratt Mines St. Ry. Co.* v. *Birmingham St. Ry. Co.*, 79 Ala. 465; Cooley, Const. Lim. p. 250, (6th Ed.;) 2 Dill. Mun. Corp. 692, 695.

An examination of the authorities here cited, and of others of like import, readily leads to the conclusion that the charter powers of the village of Duluth were not such as to enable it to confer upon the

v.49m.—19

water company the exclusive right to supply the municipality with water for the period of thirty (30) years.  Such power was certainly not expressly conferred.  Nor was it necessarily involved in the authority given to contract for a water supply, and to confer the right upon one or more private corporations to establish waterworks and a supply system.  Such general language falls short of expressing an intention to confer the power to grant an exclusive franchise which shall, in effect, bind and restrict, not only the village, but the state, in the exercise of its governmental functions, for thirty, (30,) sixty, (60,) or one hundred (100) years, or forever.  It may be said that the power to contract would be useless unless the privilege conferred may be made exclusive; for otherwise private corporations or persons would not engage in an undertaking involving the necessity for very large expenditures of capital in works which might be rendered unprofitable, if not valueless, by the subsequent action of the municipal or state government.  The argument is not without force.  The cases cited above, and others, show that it has often been advanced in support of claims of exclusive privileges, but it has rarely, if ever, prevailed.  It suggests considerations of policy which may influence the legislature to grant, or to authorize the granting of, exclusive privileges ; but the principles in accordance with which legislative grants of this kind are to be construed seem to be so clearly established that, generally, not much weight can be given to such an argument in determining the effect of particular legislative action.

The proviso in subdivision four, (4,) requiring that in any grant of authority by the village there should be a provision for the sale of the works to the village at any time after fifteen (15) years, has no bearing upon the question under consideration.  The proviso requires that the *right* to purchase shall be a condition of the grant.  It imposes no requirement or duty to purchase, and does not justify the inference that the village could only provide itself with waterworks by purchasing from the company.  *Syracuse Water Co.* v. *City of Syracuse,* 116 N. Y. 167, 187, (22 N. E. Rep. 381.)  The conclusion is thus reached that the charter powers of the village of Duluth did not permit it to grant an exclusive franchise, binding itself for the period of thirty (30) years not to establish a system of waterworks

on its own account, and that it did not become disabled to thus act in its own behalf.    This is in accordance with the decision of the district court, although we have assigned different reasons from those which influenced the decision of the learned judge of that court.    It is unnecessary to now consider the point upon which his conclusion was based.

Order affirmed.

(Opinion published 51 N. W. Rep. 913.)