ILLINOIS TRUST & SAVINGS BANK v. ARKANSAS CITY WATER CO. et al.

(Circuit Court, D. Kansas, Second Division. March 21, 1895.)

No. 314.

1. MUNICIPAL CORPORATIONS—WATER FRANCHISES—POWER OF COUNCIL.
   A city of the second class, under the laws of Kansas, is without power to grant to a private corporation an exclusive right and franchise to furnish water for public and domestic use for a period of 21 years, for this is an attempt to create a monopoly,—a power which the city council does not possess unless it is delegated in clear and unmistakable terms.

2. SAME.
   But, while the city would not be bound under such an ordinance to accept the service tendered by the water company for any definite period, it should yet be held to pay the stipulated price for water furnished for public purposes, so long as it accepts the service offered in pursuance of the ordinance.

3. SAME.
   A proposed ordinance granting water franchises, which fails to receive the requisite number of votes, but which is nevertheless assumed to have been properly passed, both by the city and the water company, and is acted upon accordingly, is to be regarded as a contract binding the city to pay the stipulated price for water furnished for public use pursuant thereto, so long as it accepts the same.

4. SAME.
   Where additions are made to the original plant of a water company upon mere informal application of its officers, without any ordinance or resolution prescribing terms and conditions, held, that the ordinance under which the original plant was constructed should be looked to for such terms and conditions.

This was a suit in equity by the Illinois Trust & Savings Bank against the Arkansas City Water Company and Arkansas City for the foreclosure of a trust deed, and an accounting as to certain

bonds secured thereby, which were issued by the defendant water company.

Rossington, Smith & Dallas, for complainant.

Ady, Peters & Nicholson and Eaton, Pollock & Love, for defendants.

WILLIAMS, District Judge.   This is a suit in equity, brought for the purpose of accounting upon certain bonds and coupons issued by the defendant water company, and for the foreclosure of a certain deed of trust given to secure payment of the same.   The facts, briefly stated, as gathered from the pleadings and evidence, are as follows:

The defendant the city of Arkansas City is a city of the second class, under the laws of the state of Kansas.   The defendant the Arkansas City Water Company is a private corporation organized for the purpose of constructing and operating a system of waterworks in said city.   On the 21st day of December, 1885, the defendant city undertook to confer a franchise upon the Interstate Gas Company, also a private corporation, whereby a system of waterworks was to be erected and maintained in said city for a period of 21 years; providing for the construction of a plant, laying of pipes, and the erection of certain fire hydrants thereon, and making of certain extensions from time to time thereon, requiring of the said Interstate Gas Company that all such fire hydrants should have a certain standard of efficiency for the purpose of fire protection.   Thereafter the plant was constructed, upon which were located 50 fire hydrants, being the number provided at the time such franchise and privilege were granted.   Thereafter the defendant the Arkansas City Water Company succeeded by purchase to all of the rights, franchises, property, and duties belonging to and devolving upon the Interstate Gas Company. At the time of the construction of the original plant of 50 fire hydrants, the Interstate Gas Company issued bonds to the amount of $200,000, and executed a deed of trust upon the plant, property, and franchise and incomes of the system to secure payment of the same. And, after the transfer of the works to the defendant the Arkansas City Water Company, it executed its bonds in the sum of $150,000, and the deed of trust upon all of the property, rights, and franchises of said company to secure payment of the same, the said $150,000 of bonds and deed of trust being the same declared upon by the complainant in this suit.   One hundred thousand dollars of such issue was used for the purpose of retiring the $100,000 in bonds issued by the said Interstate Gas Company.   The proceeds of the remaining $50,000 in bonds was paid over to the defendant water company. Thereafter, from time to time, extensions were made to the original plant, and about 135 fire hydrants were added to the system, which extensions were made of four-inch mains.   The said extensions were made upon application of the president of said water company, one J. B. Quigly, and were not made upon any formal resolution or ordinance of the defendant city.   Afterwards, on the 16th day of September, 1891, the defendant the city of Arkansas City purchased from the Arkansas City Water Company said entire system of works, and all

the property, rights, and franchise of the defendant the Arkansas City Water Company, taking therefor a deed of general warranty as evidence of said transfer of said property. The deed of trust hereinbefore mentioned was excepted from the covenant against incumbrances in said deed. No hydrant rental has been paid by the defendant city to the complainant or any one else for water furnished through said fire hydrants located upon said system since the 1st day of October, 1891. Upon the purchase of said system of waterworks, the defendant city, by ordinance duly passed and published, repealed the said former so-called ordinance of said city,—No. 27. The complainant on the 18th day of October, 1892, the interest on said bonds being in default at said date, brought this suit for an accounting of the amount due on said bonds and coupons in default, for the purpose of foreclosing said deed of trust, and for the accounting with the defendant city, and also alleging in its bill of complaint that the transfer of said property to the defendant city was fraudulent, and was for the purpose of defeating the security of the complainant for the payment of said bonds and interest thereon, and praying a decree of this court that the defendant the city of Arkansas City, in the purchase of said works, had assumed all the debts, liabilities, and obligations of its grantor, the Arkansas City Water Company, and also asking the appointment of a receiver. The defendant the Arkansas City Water Company was not served with subpoena, and has entered no appearance in this action. The defendant city answered the complainant's bill, alleging that the contract claimed to exist between the city and the Arkansas City Water Company by reason of said Ordinance No. 27 is void, for the reason that it did not have, upon its passage, the number of votes required by law; that the several extensions of the waterworks, and the addition of 135 fire hydrants, and the rental therefor, did not constitute a binding obligation upon the defendant city; that the additional fire hydrants were erected upon a plant originally designed for but 50 fire hydrants; that such extensions were made of small pipe, in long lines, and that the hydrants placed thereon were inefficient for the purpose designed by said contract, and could not be made to comply with the requirements for such fire hydrants; that said extensions were unnecessary; that fire hydrants were located so closely together as to render a large number of them unnecessary for fire protection, or any of the public purposes mentioned in said Ordinance No. 27; that said contract was illegal, unreasonable, and extortionate. The defendant city also denied that it had in any way assumed or become liable for the principal and interest upon the bonds, as alleged in the plaintiff's bill of complaint, or for the interest thereon, or that it had in any way assumed or agreed to pay the indebtedness of the Arkansas City Water Company provided thereby, and prays that the alleged contract between the defendant city and the Arkansas City Water Company provided for by said Ordinance No. 27 be declared null and void, and that the city be relieved from the payment of all hydrant rentals for the extra hydrants placed upon the extensions to said works. The complainant thereafter, by amendment to its bill, avers that, notwithstanding the failure to enact said Ordi-

nance No. 27 as required by law, the defendant city had long used and recognized the same as an existing contract between it and the Arkansas City Water Company; that by reason thereof it became and was a binding contract, notwithstanding the failure of said city to enact the same as required by its charter and the laws of the state,—and also made due replication to the answer of the city. Upon issues so joined, evidence was taken, and the cause heard by the court.

The court having heretofore heard this cause, and decreed that the said city should pay hydrant rental for the original 50 fire hydrants located upon the works, as originally constructed, and should not be required to pay hydrant rental for said additional hydrants as were added thereto, thereupon one George E. Hopper, receiver in charge of said works under order of this court, applied to the court for additional hydrant rental, averring that the said hydrants on said extensions were efficient, and in all respects complied with the conditions and requirements of the provisions of said Ordinance No. 27; and thereon testimony was taken, and submitted to the court, regarding such efficiency. Thereafter, for good cause shown, the decree, as heretofore placed of record in this cause, was set aside, and the case reopened for further consideration and argument, and is now before the court upon the printed briefs of solicitors for complainant and the receiver in charge, and counsel for defendant city.

Upon the trial of this cause it was not seriously contended by counsel for complainant that the defendant city had assumed the payment of, or was in any way personally liable for, the bonds in suit, and there is no evidence to warrant such finding. The evidence also fails to disclose that there was any fraudulent intent or wrongful purpose on the part of the defendant city in the purchase of the works. It does, however, clearly appear from the evidence that the bonds in suit and the trust deed were duly made and executed by the defendant water company, and constitute a valid first lien upon all the property, rights, and franchises of the Arkansas City Water Company, defendant, in said city; that the interest upon said bonds had been defaulted prior to the bringing of this suit, by reason whereof the whole amount of said bonds had become due and payable, and the complainant entitled to a decree of foreclosure thereon.

The serious controversy in this suit arises upon the following propositions: First. Does a city of the second class, under the laws of the state of Kansas, have the power to grant an exclusive right and franchise to a corporation to furnish water for public and domestic use within said city for a period of 21 years? Second. Was the so-called ordinance of defendant city, No. 27, legally enacted; and, if not, what rights, if any, were acquired under the same? Third. Should the defendant city be required to pay a stated hydrant rental upon any or all of the additional fire hydrants placed upon extensions to the original plant? A decision of the foregoing propositions is necessary, to fully determine the matters in controversy in this suit.

Recurring to the first proposition, I cannot give my assent to the doctrine so ably contended for by counsel for complainant in their ex-

haustive brief, that the defendant city had the power to grant an exclusive franchise, and for the period of time as set forth in said Ordinance No. 27 of the defendant city. The right to furnish water for public and domestic use within a city is a public service, and of such high consequence to the public that it should at all times remain open to the control of the city council for the benefit of the public. The contract here insisted upon would place the matter beyond control of the council for a long period of time. This is in the nature of an attempt to create a monopoly,—a power which the city council never possesses, unless it is delegated in clear, unmistakable terms. This view is fully sustained by the following authority: Jackson County Horse R. Co. v. Interstate Rapid Transit Ry. Co., 24 Fed. 306; Omaha Horse R. Co. v. Cable Tramway Co., 30 Fed. 324; Saginaw Gas-Light Co. v. City of Saginaw, 28 Fed. 529, 540; Gas-Light Co. v. Middletown, 59 N. Y. 228; Chicago v. Kumpff, 45 Ill. 90; Gale v. Kalamazoo, 23 Mich. 344; State v. Cincinnati Gas Light & Coke Co., 18 Ohio St. 262; Logan v. Pyne, 43 Iowa, 524; Long v. City of Duluth, 49 Minn. 280, 51 N. W. 913. As supporting the same doctrine, also: Minturn v. Larue, 23 How. 435; Wright v. Nagle, 101 U. S. 791. It does not, however, follow, in my judgment, that the attempt to grant such exclusive privilege for a fixed period of time would render the entire ordinance illegal. On the contrary, all that this court now decides is that the city is not bound to accept the service tendered by the water company for any definite and fixed period of time, but, under contract made in pursuance of an ordinance legally adopted, the city should be held to pay the stipulated price, so long as it accepts the service offered in pursuance of the contract.

Whether Ordinance No. 27 was legally adopted, in the opinion of the court, is practically disposed of by the statute and the undisputed evidence in this suit. Section 765, Gen. St. 1889, reads as follows:

"All ordinances of the city shall be read and considered by sections at a public meeting of the council, and a vote on their final passage shall be taken by yeas and nays, which shall be entered on the journal by the clerk, and no ordinance shall be valid, unless a majority of all the members elected, vote in favor thereof; provided, however, that when the council are all present and voting and there shall be a tie, the mayor shall have the power to give the casting vote on the passage of any ordinance."

The evidence shows that, at the time of the consideration of said Ordinance No. 27, the said council of defendant city was composed of eight members, seven of whom were present; four voting in the affirmative, and three in the negative,—the mayor not voting. This being true, the ordinance was thereby rejected. But it appears that the officers of defendant city and the Interstate Gas Company all proceeded upon the idea that said Ordinance No. 27 was duly adopted, and had become a legal ordinance of said city; that the original system of waterworks provided for in said alleged ordinance was put in by the Interstate Gas Company, and accepted by the city, in pursuance of said ordinance, and that there were attached thereto, for public use, 50 public fire hydrants, the efficiency of which was duly accepted by the mayor and council of said city, in pursuance of the terms of said ordinance; and that the city has ever since said time continued to use said 50 fire hydrants for fire protection.

The court therefore holds that the terms of said contract, and the erection and extension of said original system of waterworks under the same, constitute a contract on the part of the city with the owners of said waterworks, and that the city shall continue to pay for the use of said 50 hydrants, at the rate of $60 a year, so long as said city continues to use the same for fire protection, and that the water company, its successors and assigns, are entitled to the use of the streets, alleys, and public grounds of the city for the purposes of maintaining and operating said system of works. But the obligation of this contract, like that of all others, is mutual, and, to entitle a recovery for hydrant rental, the standard of efficiency must fairly comply with the terms of the contract, and that standard is as follows:

"That the works erected by the Interstate Gas Company, its successors and assigns under this ordinance, are able to throw simultaneously, four (4) streams of water from any four (4) hydrants to be designated by the mayor and city council through one hundred feet of two and a half inch rubber hose, and one inch ring nozzle, at least sixty-five (65) feet high from stand pipe alone and eighty-five feet high by direct pressure from pumps."

The right of the water company, its successors and assigns, to recover from the defendant the said hydrant rentals for the 135 additional fire hydrants shown by the evidence to have been placed upon extensions for the completion of the original system, is the only remaining question. This is a question, I think, important to the parties to this suit, but its determination is necessary from the fact that, in the deed of trust sought to be foreclosed by complainant, such hydrant rentals are assigned as a part of the security for the prompt payment of the bonds and interest thereon; and as the complainant asks a decree of foreclosure and sale of all the property, rights, and franchises and income of the water company, it is important to know what the purchaser at such sale shall acquire by his purchase; and for the further reason, that it appears from the evidence that no hydrant rental has been paid by defendant city since the year 1891, and the complainant prays for an accounting with defendant city as to the amount of hydrant rentals now due, and a decree for the same. Upon this branch of the suit a large number of witnesses were orally examined before the court, and many of the depositions on file bear upon this question. If this claim for hydrant rentals for fire hydrants located upon extensions to the original plant is upheld, it fixes a charge of about $8,000 annually upon the defendant city. So great a charge upon the revenues of the city must rest upon some well-authenticated enactment of the common council of said city, or upon a binding and subsisting contract, in which the rights, duties, and liabilities of the respective parties are clearly defined and set forth; and even then—such a contract, if found to exist, being in its nature purely executory—the demanding party takes upon himself the burden of proving a substantial compliance with the terms and conditions of such contract before any recovery will be decreed therefor. A careful review of the evidence upon this proposition clearly shows that there is no ordinance or resolution of defendant city authorizing such extensions to be made. The evidence does show such

extensions to have been made upon informal applications of the officers of defendant water company, without any apparent regard to the rights or necessities of the inhabitants of defendant city. In these informal orders for such extensions there is nothing prescribing the efficiency of the service, or the terms and conditions upon which it is to be rendered, and the length of time during which such service shall continue is not specified. Therefore, a test of such efficiency having been once agreed upon between the parties, we must look to the original contract to find what the terms and conditions are upon which such additional service is to be tendered and received. Applying the test fixed in the original contract, I do not hesitate to say that not one of the fire hydrants located upon extensions to the original plant come up to the requirements of such standard of efficiency. The parties to this suit were at great pains to make ample tests of these fire hydrants under the supervision of competent engineers and experts, who have testified to the results. This evidence satisfies my mind that the hydrants located upon such extensions do not afford protection to the portion of the city in which the same are located, and are of no practical utility to the defendant city. It follows that this claim for hydrant rentals must be denied, and is denied. The decree heretofore entered in this suit having been set aside because the same was not in accord with the opinion of the court, a decree will now be entered in conformity with this opinion.