JAMES C. FLYNN v. LITTLE FALLS ELECTRIC & WATER COMPANY.

November 14, 1898.

Nos. 10,909—(4).

**Village of Little Falls—Contract with Water Co.**
The common council of the city (formerly village) of Little Falls had authority to make a time contract with a water company to pay an agreed price for a specified number of hydrants to supply water for fire protection, provided the length of time the contract was to run was reasonable.

**Same—30 Years Unreasonable Period—Ultra Vires.**
But held, that 30 years was an unreasonable length of time, and that a provision in an ordinance assuming to bind the city for that time is void, not being within the scope of the authority of the municipal authorities.

**Injunction—Taxpayer may Maintain Action.**
A taxpayer of the city can maintain an action to restrain the common council from paying out money on such void contract.

On Reargument.

January 30, 1899.

**Village of Little Falls—Laws 1885, c. 145—Laws 1893, c. 191.**
The village of Little Falls was a village "incorporated under the provisions of Laws 1885, c. 145," within the meaning of Laws 1893, c. 191.

**Laws 1893, c. 191, not Special Legislation—Laws 1891, c. 146.**
Laws 1893, c. 191, is not repugnant to article 4, § 33, of the constitution, prohibiting special legislation regulating the affairs of a village, because it did not include within its provisions villages incorporated by

special charter or villages of over 3,000 inhabitants, incorporated under Laws 1891, c. 146.

**Laws 1893, c. 191, Applicable to Village Ordinance—Not Applicable to Amendment by City—Title of Act.**

The curative act of 1893 applies to an ordinance of the village of Little Falls, although before the act was passed the village had ceased to exist, and had been superseded by the city of Little Falls, as its successor, under Sp. Laws 1889, c. 8; but it would not apply to an amendatory ordinance subsequently passed by the city. The title of the curative act, to wit, "An act legalizing and confirming village ordinances and contracts in certain cases," sufficiently expresses its subject.

**Laws 1895, c. 8, § 132—Legislative Policy as to Duration of Contracts.**

The provisions of Laws 1895, c. 8, § 132, relative to time contracts for supplying with water cities incorporated under that act, cannot be construed as a declaration of legislative policy on the same subject as to villages incorporated under Laws 1885, c. 145.

Action in the district court for Morrison county by plaintiff in behalf of himself and all other taxpayers of defendant city against the city of Little Falls, its mayor, clerk, treasurer, the members of its common council and the Little Falls Electric & Water Company to enjoin the city and its officers from continuing to carry out the provisions of a certain ordinance. From an order, Baxter and Searle, JJ., sustaining the demurrer of defendant company to the complaint, plaintiff appealed. Reversed.

*Calhoun & Bennett*, for appellant.

The contract is invalid because it attempts for a term of years to surrender the power of the city to exercise its discretion as to the needs of the city, and binds it to pay for what it does not need at an excessive price; and because it creates a virtual monopoly. Long v. City of Duluth, 49 Minn. 280; Dillon, Mun. Corp. (4th Ed.) §§ 97, 691, note; Richmond v. Town, 59 N. Y. 228; City v. Brenham, 67 Tex. 542; Kiichli v. Minnesota Brush E. Co., 58 Minn. 418; Garrison v. City, 7 Biss. 480, 486; East St. Louis v. City, 47 Ill. App. 411; City v. East, 19 Ill. App. 44; City v. East St. Louis, 98 Ill. 415; Gale v. Village, 23 Mich. 344; Davenport v. Kleinschmidt, 6 Mont. 502; Syracuse v. City, 116 N. Y. 167. See, also, on the question of

monopolies and long time contracts: Saginaw G. L. Co. v. City of Saginaw, 28 Fed. 529; Omaha Horse Ry. Co. v. Cable Tramway Co., 30 Fed. 324; State v. Cincinnati, 18 Ohio, 262; Shelden v. Fox, 16 L. R. A. 257, note; Citizens v. Town, 114 Ind. 332; Altgelt v. City, 81 Tex. 436; Grant v. City, 36 Iowa, 396; Columbus v. Mayor, 48 Kan. 99; City v. Citizens, 132 Ind. 114.

Plaintiff may maintain the action. 2 Dillon, Mun. Corp. (4th Ed.) §§ 914–922; Sinclair v. Board of Co. Commrs., 23 Minn. 404; Todd v. Rustad, 43 Minn. 500; State v. Weld, 39 Minn. 426; Hodgman v. Chicago & St. P. Ry. Co., 20 Minn. 36 (48); Tukey v. City, 54 Neb. 370; Crampton v. Zabriskie, 101 U. S. 601; Savidge v. Village, 112 Mich. 91; Blood v. Manchester 68 N. H. 340; Prince v. Crocker, 166 Mass. 347; Santa Rosa v. Woodward, 119 Cal. 30; Van Allen v. Dunton, 24 Misc. 230; Wood v. City of Victoria, 18 Tex. Civ. App. 573; Farmer v. City of St. Paul, 65 Minn. 176.

*Lindbergh, Blanchard & Lindbergh,* for respondent.

The complaint does not allege facts entitling plaintiff to relief. In the absence of allegations of fraud or unfair means, the court will not inquire into the reasonableness of the council's proceedings. Scribner v. Allen, 12 Minn. 85 (148); 2 High. Inj. § 1240; Moses v. Risdon, 46 Iowa, 251; Altgelt v. City, 81 Tex. 436; Blood v. Manchester, 68 N. H. 340; Mayor v. Eldridge, 64 Ga. 524; Phelps v. Watertown, 61 Barb. 121; Andrews v. Board, 70 Ill. 65; Mayor v. Weatherby, 52 Md. 442; Fitzgerald v. Harms, 92 Ill. 372; McKinley v. Chosen, 29 N. J. Eq. 164; Lane v. Morrill, 51 N. H. 422; Foland v. Town, 142 Ind. 546; Buie v. Cunningham (Tex. Civ. App.) 29 S. W. 801; Farland v. Wood, 35 W. Va. 458; City v. Circuit Judge, 79 Mich. 384; Seward v. Liberty (Ind.), 42 S. E. 39. Plaintiff should point out some void part of the ordinance. Davis v. Fasig, 128 Ind. 271. The contract was within the powers of the city, and was binding. City v. Indianapolis, 66 Ind. 396. The act of the council, in attempting to repeal and rescind the contract without consent of the company, was void, as an attempt to take away a vested right. New Orleans Gas L. Co. v. Louisiana L. M. Co., 115 U. S. 650; Louisville Gas Co. v. Citizens Gas Co., 115 U. S. 683; St. Tammany Waterworks Co. v. New Orleans Waterworks

Co., 120 U. S. 64; Ohio Life Ins. & T. Co. v. Debolt, 16 How. 416; New Orleans Waterworks Co. v. Rivers, 115 U. S. 674; Illinois T. & S. Bank v. City of Arkansas City, 76 Fed. 271; McBean v. City, 112 Cal. 159; Bailey v. City, 184 Pa. 594; Merrill v. City, 80 Wis. 358; Light Co. v. City, 73 Miss. 598; Black v. City, 175 Pa. St. 101.

MITCHELL, J.

The present city of Little Falls was organized first as a village (Sp. Laws 1879, c. 6), with the power to establish such regulations for the prevention and extinguishment of fires as it might deem expedient, and afterwards as a city (Sp. Laws 1889, c. 8), with power to erect waterworks for the supply of water to the city and its inhabitants, or to grant to third parties the right to erect waterworks for the same purpose, and to lay water pipes and mains in the streets of the city, in accordance with such terms and conditions as might be agreed upon. In January, 1889, the village council passed an ordinance, which, as subsequently amended by the common council of the city, granted to certain persons, their successors or assigns, for 30 years, the privilege of laying water pipes and mains in the streets of the city on the following, among other, terms and conditions:

The grantees or their successors were within two years to have waterworks of a specified extent, capacity and power constructed and ready for use, and to connect a specified number of fire hydrants with the water mains; the common council to have thereafter the right to order an extension of the mains along other streets which could be reached by a continuance of existing mains; the water company to put in fire hydrants at specified distances along such extensions, and to supply water at established rates to the inhabitants along the streets where the pipes were extended. The grantees were to maintain the mains and hydrants ready for use for fire protection and operate the waterworks, after their completion, for the full term of 30 years. For the use of these hydrants (which proved to be 55 in number) the city was to pay $80 each per year for the full term of 30 years. The city was to have the right to take from the mains water to supply all buildings occupied by it for public purposes. The water

company was to furnish the city until March 1, 1914, with 12 other hydrants (in addition to the 55), and in consideration therefor the city was to pay all taxes assessed for city purposes on the waterworks during the 30 years, and give to the company the use of certain water power owned by the city.

The ordinance provided for its acceptance by the grantees within 60 days, upon which it should constitute a contract between the parties, which should not be altered or amended except by mutual consent. The grantees assigned all their rights and privileges under the ordinance to the defendant, the Little Falls Electric & Water Company. The ordinance was accepted by the grantees, and the waterworks were constructed and put in operation, and, presumably, in the absence of any allegation to the contrary, the water company has complied with all the terms and conditions of the ordinance.

In addition to the foregoing facts, the complaint alleges that the needs of the city do not, never have, and will not for years, require a greater number of hydrants than 35; that $80 per hydrant per year is an unreasonable and exorbitant price, and at least $40 per hydrant per year higher than the reasonable value thereof; that the city and its officers, claiming and pretending that this ordinance is a valid and binding contract, are paying the water company $80 per year for each of the 55 hydrants, and intend to continue to do so unless restrained by court.

The plaintiff's contention is that the ordinance, at least in so far as it assumes to obligate the city to pay this price for all these hydrants for 30 years, is void, because not within the scope of the power or authority of the village or city. Plaintiff, a resident and taxpayer of the city, brings this action, in behalf of himself and all other taxpayers, to enjoin the city and its officers from continuing to carry out the provisions of the ordinance by paying the water company $80 per year for each of the 55 hydrants. To this complaint the water company interposed a demurrer on the grounds that it did not state a cause of action, and that the plaintiff had not the legal capacity to sue. This appeal is from an order sustaining the demurrer.

1. Whatever other relief the plaintiff may ask in his complaint, the main and primary object of this action is to prevent the illegal expenditure of public money by the municipal authorities by carrying out a contract which is illegal and void because wholly without the scope of the authority of the municipality. Of the right of the taxpayer to invoke the interposition of the courts to prevent by injunction such an illegal disposition of public money, which he, in common with other taxpayers, will be compelled to pay in the form of increased taxes, there is at this day no serious doubt. 2 Dillon, Mun. Corp. (4th Ed.) §§ 914–922, and cases cited; Sinclair v. Board of Co. Commrs., 23 Minn. 404; State v. Weld, 39 Minn. 426, 40 N. W. 561; Todd v. Rustad, 43 Minn. 500, 46 N. W. 73. According to the allegations of the complaint the city council are paying out this money, not in the exercise of their discretion as to the best method of supplying the city with water, but on the claim that the city is legally bound to pay it by a valid pre-existing contract. If this contract is wholly void, as alleged, we have no doubt that plaintiff, as a taxpayer, may maintain this action.

2. This brings us to the merits of the case, viz.: whether it was within the scope of the authority of the village or city council to enter into a contract in behalf of the municipality obligating it to pay $80 a year for 30 years for each of 55 fire hydrants.

The vice, if any, in this ordinance, viewed as a contract, consists mainly, if not entirely, in the length of time for which it bound the city to pay annually this sum of $4,400 for fire hydrants. The number of hydrants, the price to be paid per hydrant, and the other provisions of the ordinance, are chiefly important in so far as they bear upon the question of the power of the village or city council to bind the city for so long a period of time. We have no doubt as to their power to contract with this or any other water company with reference to furnishing the city and its inhabitants with water. And, inasmuch as it might be impossible to induce any individual or corporation to expend the necessary capital to construct waterworks in a small village or city without assurance of patronage by the municipality itself for some definite amount and time, we have no doubt of the power of the village or city council to make a time contract with the company for supplying the city with

water for fire protection, provided the time is reasonable. And as a somewhat liberal contract in this regard might be necessary to induce men to put in waterworks at all, we would not be inclined to give any controlling weight to the mere fact that the number of hydrants contracted for was beyond the present needs of the city, or that the price agreed to be paid was somewhat greater than the value of the use of the hydrants, considered alone and by itself. But the power of municipal authorities to contract in relation to a given matter does not carry with it by implication power to make a contract, even with reference to such matter, which shall cede away, control or embarrass their legislative or governmental powers, or render the municipality unable in the future to control any municipal matter over which it has legislative power.

Where municipal authorities are authorized to contract in relation to a particular matter, they have a discretion, as to methods and terms, with the honest and reasonable exercise of which a court cannot interfere, although they may not have chosen the best method, or made the most advantageous contract. But this is not an unlimited and arbitrary discretion to make any kind of contract that they see fit, as the court below, in its memorandum, seems to think. If so, the city council might have made a contract running 100, or even 500, years, as well as 30 years. This would be a very dangerous doctrine, for by reason of the incompetency or dishonesty of these officials the powers of a municipality might be thus bartered away for so long a period of time as to practically disable it from performing its public duties. While the ordinance, on its face, does not purport to grant any exclusive franchise, yet the practical effect is almost necessarily to give the grantees a monopoly for 30 years of the business of furnishing water to the city and its inhabitants. If the city is bound to pay $4,400 a year for 30 years for water for fire protection alone, it probably could not afford to incur the extra expense of either building waterworks itself, or making any contract with any other company that would induce it to do so. Hence whatever improvements may be made in the future in the methods of supplying the public with water, in the quality of water supplied, or in the method of fire protection, the city and its inhabitants are tied down by this ordinance to the present system,

and practically confined to the supply furnished by the company for 30 years.

Little Falls was, and is, a new and small city, whose future was uncertain. Thirty years is almost a generation, and, in this age, a long time in the history of any community. It has been attempted to bind it for that length of time to pay for between 35 and 40 per cent. more hydrants than its present needs require, and to pay for them 100 per cent. more than their present value. It may never need any such number of hydrants, and the value of their use may never increase so as to equal the price agreed to be paid. For these reasons we are of the opinion that the provisions of this ordinance, providing that the city should pay this price for this number of hydrants for 30 years, is, as to time, unreasonable and void, as being beyond the scope of the authority of the municipal authorities. What effect the invalidity of this provision will have on the balance of the ordinance we need not now consider. The fact that the plaintiff may have asked for more relief than he is entitled to under the facts pleaded does not affect the sufficiency of the complaint. It states facts entitling the plaintiff to an injunction restraining the city officers from continuing to pay the water company this money under this contract.

This will not in any way prevent the common council from providing the city with water, or in any way interfere with the exercise of their discretion as to the choice of ways and methods of doing so. They will remain at liberty to contract for such supply with the same company. They are not now paying this money in the exercise of any discretion, but on the ground that the city is legally bound by contract to pay it. The effect of the injunction will be merely to restrain their carrying out this invalid provision of the ordinance, and thus compel the municipal authorities to exercise in a legal way their power to contract for a supply of water for fire protection, and properly to exercise their discretion as to ways and methods, precisely as if this invalid provision had never existed. If, in the honest exercise of their legislative discretion, the common council concludes that the city requires 55 hydrants for fire protection, and that $80 per year per hydrant is a reasonable price, they would have the right to enter into a contract on those

terms with the water company, to run a reasonable length of time.

There is no danger of such an injunction leaving the city without water for fire protection. The common council would have no right summarily to shut off the water, so as to leave the city without such protection, and certainly no court would compel them to do so. And, as the business of the water company is "affected with a public interest," it would have no right summarily and arbitrarily to shut off the supply of water because this "time provision" of the ordinance is declared invalid. Our conclusion is that the demurrer to the complaint should have been overruled.

Order reversed.

Upon application of respondent, an order was made December 23, 1898, granting a reargument, but only on the following questions:

(1) Was the ordinance involved in this case legalized by Laws 1893, c. 191, as amended by Laws 1897, c. 224? And, particularly, was Little Falls a village incorporated under the provisions of Laws 1885, c. 145, within the meaning of Laws 1893, c. 191? (2) What effect, if any, should be given to Laws 1895, c. 8, § 132, as a declaration of legislative policy?

*Calhoun & Bennett*, for appellant.

There is no presumption in favor of the validity of the ordinances and contracts of a municipality, but the power to make them must be made to appear. 1 Dillón, Mun. Corp. (4th Ed.) § 89; Long v. City of Duluth, 49 Minn. 280. A grant by the legislature to cities under restrictions of the right to grant franchises and make 30-year contracts is not to be taken as a declaration of policy applicable to villages. Laws will not be given a retroactive effect unless the intention is clear. Kellogg v. Larkin, 3 Chand. (Wis.) 133. There is no presumption that in contracting the parties were influenced by a subsequent act. Ordinances and contracts which contract away the legislative or governmental functions are void, unless the power to pass and make them is expressly given. Long v. City of Duluth, supra; State Trust Co. v. City of Duluth, 70 Minn. 257; Illinois T. & S. Bank v. City of Arkansas City, 76 Fed. 271. It has been the policy of this court to construe the powers of munici-

palities strictly.  Long v. City of Duluth, supra; Kiichli v. Minnesota B. E. Co., 58 Minn. 418.  Laws 1895, c. 8, § 132, was not intended as a restriction, but as a grant of power.

The ordinance was not legalized by Laws 1893, c. 191, as amended by Laws 1897, c. 224.  At the time of the passage of the first act there had been no village of Little Falls for four years.  At the time of the passage of the two acts there were no village ordinances or contracts to be confirmed.  There is nothing in either act to indicate that they were intended to apply to cities.  Had the terms of the act attempted to make them so applicable, they would have been unconstitutional, on the ground that the subject was not expressed in the title.  Cooley, Const. Lim. (5th Ed.), 170, 179; Sun v. Mayor, 8 N. Y. 241; 1 Dillon, Mun. Corp. (4th Ed.) § 51, and note (p. 89); State v. Cassidy, 22 Minn. 312; State v. Porter, 53 Minn. 279; State v. Burns, 38 Fla. 367.  Laws 1897, c. 224, is special legislation, since it attempts to validate the acts of certain villages without naming them.  Nichols v. Walter, 37 Minn. 264; State v. Hammer, 42 N. J. L. 435.  The legislature could not pass a law authorizing the villages of the class named to make contracts of the kind in question, and hence it cannot ratify contracts attempted to be made.  Independent v. City, 60 Iowa, 500; Stange v. City, 62 Iowa, 303; Greenhood, Pub. Pol. Rule 4.

There is nothing in the record to show how the village was incorporated.  It was not incorporated under Laws 1885, c. 145, within the meaning of the acts in question.  It is suggested that it is for plaintiff, in order to show that the acts are unconstitutional, to make it appear that there are other villages incorporated after 1890 which had made water contracts.  But on this point the court could not hear evidence.  In passing on the constitutionality of a statute the court can only consider facts which may be noticed judicially.

*C. A. Lindbergh* and *Davis, Kellogg & Severance*, for respondent.

The ordinance was not inhibited by positive prohibition of law or by the constitution, nor was it void on the ground of public policy. Lommen v. Minneapolis Gas L. Co., 65 Minn. 196.  The public policy of a state is determined by its constitution, the acts of its

legislature and, when these have not spoken, by the decisions of its courts; and by the constant practice of its officers and the universal custom of its people. Kellogg v. Larkin, 3 Chand. (Wis.) 133; U. S. v. Trans-Missouri Freight Assn., 166 U. S. 290, 340; Vidal v. Mayor, 2 How. 127; Swann v. Swann, 21 Fed. 299. Such contracts have frequently been before this court and the United States circuit court for this district, in suits brought for hydrant rentals, or involving contract provisions, and these contracts have been enforced without suggestion of their invalidity. Sykes v. City of St. Cloud, 60 Minn. 442; State Trust Co. v. City of Duluth, 70 Minn. 257; Long v. City of Duluth, 49 Minn. 280; City of Duluth v. Duluth G. & W. Co., 45 Minn. 210; Fergus Falls Water Co. v. City of Fergus Falls, 64 Fed. 587. Laws 1895, c. 8, § 132, is a declaration of the legislative branch of the government authorizing such contracts.

The village of Little Falls was incorporated under Laws 1885, c. 145. Hence Laws 1893, c. 191, if constitutional, made the contract between the village and the water company valid and binding from its date. Curative acts should receive a liberal construction. State v. Spaude, 37 Minn. 324; Sutherland, Stat. Const. § 272. The ordinance was legalized by Laws 1893, c. 191. The legislature had authority to grant the power, and what it could grant it could ratify. State v. Starkey, 49 Minn. 503; Nash v. Lowry, 37 Minn. 261; Read v. Plattsmouth, 107 U. S. 568; Wistar v. Foster, 46 Minn. 484; Single v. Supervisors, 38 Wis. 363; Kimball v. Town, 42 Wis. 407; Grim v. Weisenberg, 57 Pa. St. 433; Underwood v. Lilly, 10 S. & R. 97; Satterlee v. Matthewson, 16 S. & R. 169; Mercer v. Watson, 1 Watts, 330; Smith v. Hard, 59 Vt. 13; Mason v. Spencer, 35 Kan. 512; Tifft v. City, 82 N. Y. 205; Williams v. Milwaukee, 79 Wis. 524; Village v. Reed, 21 Neb. 261. Laws 1893, c. 191, is general in form; and unless it is special in its operation, it is constitutional. The legislature may classify villages for the purpose of regulating their affairs, provided the classification is based on some substantial distinction. State v. Cooley, 56 Minn. 540; State v. Spaude, supra; State v. Sheriff of Ramsey Co., 48 Minn. 236; State v. Donaldson, 41 Minn. 74; Le Vallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249; Cobb v. Bord, 40 Minn. 479; McCormick v. Village of

West Duluth, 47 Minn. 272; Johnson v. St. Paul & D. R. Co., 43 Minn. 222; State v. District Court, 61 Minn. 542; State v. Egan, 64 Minn. 331; State v. Sullivan, 62 Minn. 283. The classification was reasonable. It is true that the classification applies only to villages incorporated under the act of 1885 prior to 1891. But the act must be presumed to be constitutional until the contrary is shown. Lommen v. Minneapolis Gas L. Co., supra; State v. Sullivan, supra. The court will not presume that there were any such corporations. A general law cannot be made applicable to curative acts. The provision of the constitution that the legislature shall pass no special law regulating the affairs of villages (article 4, § 33) covers laws prospective in effect; nor does every act affecting a village come within its purview. State v. Sullivan, supra. Curing a contract made with the village is not regulating its affairs. Nor is the act within the provision prohibiting the granting to any corporation any special or exclusive privilege, immunity or franchise whatever. Const. art. 4, § 33; Brady v. Moulton, 61 Minn. 185. See Read v. Plattsmouth, supra; Richman v. Board, 77 Iowa, 513; State v. Hitchcock, 1 Kan. 178.

On January 30, 1899, the following opinion was filed:

MITCHELL, J.

A reargument of this case was granted only as to the force and effect of certain statutes, which were not called to the attention of the court on the argument already had. One of the questions for reargument was the following:

"Was the ordinance involved in this case legalized by Laws 1893, c. 191, as amended by Laws 1897, c. 224? And, particularly, was Little Falls a village incorporated under the provisions of Laws 1885, c. 145, within the meaning of Laws 1893, c. 191?"

While the initiative act towards the incorporation and organization of the village of Little Falls was Sp. Laws 1879, c. 6, instead of the action of the inhabitants in accordance with the provisions of the general village law then in force (Laws 1875, c. 139), yet the special act expressly enacted that the territory was set apart and incorporated as a village under the provisions of the general law, except as hereinafter (in the special law) otherwise provided, and

that, when organized in accordance with the general law, it should thereafter be endowed with all the rights, powers and duties therein (the general law) delegated and prescribed. The exceptions were merely as to the matters of the constitution of the village council and the appointment of a village marshal instead of electing a village constable. The important thing was, not by what particular agency the village was brought into existence, but what statute governed it after it was brought into being. We think, therefore, that the village, when first created, was a village incorporated under the general law of 1875.

The so-called "General Village Act of 1883" (Laws 1883, c. 73) may be omitted from consideration, as it was declared unconstitutional in State v. Simons, 32 Minn. 540, 21 N. W. 750. The next general village act was Laws 1885, c. 145. This superseded the act of 1875, and is still in force. The second section of this act provided that

"Every village which has been or shall be organized or incorporated under the general statutes shall be hereafter governed according to the provisions of this chapter, to the end that uniformity of village government and equal privileges to all may be secured."

In view of the expressed object of this section, the words "organized or incorporated" should be liberally construed, so as to include all villages governed by the provisions of the general law, without regard to how they were first technically incorporated or brought into being. We are therefore of opinion that the village of Little Falls became a village incorporated under the provisions of Laws 1885, c. 145, within the meaning of Laws 1893, c. 191.

This latter act is assailed by special legislation, regulating the affairs of a village, in violation of article 4, § 33, of the constitution. The ground of attack is that the classification adopted by the act is arbitrary. We think that counsel for the plaintiff have overlooked the fact that this is merely a curative act, intended to provide for a temporary object, to wit, the legalizing of a certain class of existing village ordinances and contracts. For such a purpose, a really distinctive class may, and often must, be based upon existing temporary circumstances. Cobb v. Bord, 40 Minn. 479, 42 N. W. 396;

Iowa v. Soper, 39 Iowa, 112. Hence the act is not subject to the objection of being special legislation, if it in fact includes all existing village ordinances and contracts similarly situated as respects the subject and object of the act.

The act is clearly applicable to all villages incorporated under the general statutes prior to January 1, 1891. The only villages organized prior to that date which are excluded from its operation are those incorporated and governed by special charters. The fact that these were governed by existing special laws was a good legal reason for excluding them from the class. In passing a general law, the legislature is not required to repeal existing special legislation, so as to include within the operation of the general law objects governed by such special legislation. Moreover, the fact that villages are governed by special legislation, granting them powers not only different from each other, but also different from those granted by the general law, might, of itself, be a good ground for excluding them from the operation of the general law, on the ground that they were not similarly situated. Substantially the same reasons apply to the exclusion from the operation of the act of villages of over 3,000 inhabitants which might have been previously organized under Laws 1891, c. 146, which are expressly granted very extensive powers in relation to contracting with private companies or persons for supplying their inhabitants with water or light.

But the classification is further assailed because the act does not include villages that may have been incorporated under the general law of 1885, between January 1, 1891, and March 1, 1893, the date of enactment of the curative act. This would not affect the validity of the act, if in fact there were no villages incorporated between those dates which had passed or made any invalid ordinances or contracts of the kinds or under the circumstances described in the curative act, to which the act would have applied, or which would have been affected by it, if its terms had been otherwise broad enough to include them. This presents a peculiar state of facts. This is not a matter which is necessarily the subject of proof on the trial, for the reason that a court will take judicial notice of all facts bearing upon the constitutionality of a statute. But we do not

74 M.—13

actually know what the facts are, and can only find out by examining the records in the office of the register of deeds in every county in the state, to ascertain what villages had been organized, under the general law of 1885, between the dates named, and then examining the records and proceedings of all such villages, if any. As we shall have to affirm the former decision upon another ground, we decline at this time to pass upon this phase of the case.

By Sp. Laws 1889, c. 8, all the territory within the limits of the village, with some contiguous territory, was incorporated into the city of Little Falls, as the successor of the village of the same name. This act provided that, from and after its passage, the village municipal government should cease, and the city should thereupon succeed to all the property of the village, and be liable for all its debts, and that all rights, privileges and franchises theretofore granted in the village should continue and be in force in the city, with the same validity, and for the same time and upon the same conditions, as if granted by the city; also that all ordinances of the village, not inconsistent with the provisions of the act, were adopted as the ordinances of the city, and should remain in full force until repealed or amended by the city.

It is urged that the ordinance in question does not come within the operation of the curative act, because the village of Little Falls had previously ceased to exist, and the city of the same name became its successor, and the act does not apply to cities. It is true the act does not apply to cities, but the subject of the act is not existing villages, but certain ordinances and contracts passed or made by villages in the past. The whole act relates to the past, and is purely curative of past acts. The original ordinance was passed on January 10, 1889, while Little Falls was still a village, and therefore comes within the provisions of the curative act, notwithstanding the fact that subsequently, and before the act was passed, the village, as such, had ceased to exist, and the city had become its successor. For the same reasons, we think the title of the act, to wit, "An act legalizing and confirming village ordinances and contracts in certain cases," sufficiently expressed its subject.

But, while the original ordinance was passed by the village, it is alleged that it was amended by the city, December 10, 1889, which

was after the village had been superseded by the city. The ordinance as amended is set up in the complaint, but it nowhere appears what were the provisions of the original village ordinance, or what were the provisions of the amendatory city ordinance. Hence, for anything that is alleged, the 30-year contract referred to in the former opinion might have been enacted, not by the village, but by the city. The curative act would not apply to the amendatory ordinance of the city. Therefore we could not, upon the facts alleged in the complaint, hold that this provision of the amended ordinance was validated by the curative act.

2. The second question for reargument is:

"What effect, if any, should be given to Laws 1895, c. 8, § 132, as a declaration of legislative policy?"

This is found in what is known as the "Howard Charter," being "An act to provide for the incorporation, organization and government of cities," and reads as follows:

"It [the city council] shall also have the power to contract with individuals, firms or corporations for the use of water for protection against fire and other purposes. It shall also have the power to contract with individuals, firms or corporations for the use of electric or gas light for street lighting and other purposes. Such contracts for water, electricity and gas to be made for such time as the council may deem for the best interests of the city, not to exceed thirty years for water, and not to exceed five years for gas or electricity for street lighting and other public purposes."

Whatever this may amount to as a declaration of public policy, it must be kept in mind that it applies only to cities incorporated under the provisions of that act, and which must have at least 1,000 inhabitants, and not to villages incorporated under the provisions of Laws 1885, c. 145, and which, under the amendment of 1887 (Laws 1887, c. 62), may have only 175 inhabitants. In order to determine what effect, if any, should be given to this section as a declaration of public policy as to villages, all the provisions of the act of 1895 and of the general village law of 1885 should be examined and compared; for it does not follow that because the legislature might have deemed a 30-year contract for water by a city, under all the restrictions and provisions of the act of 1895, might

not be unreasonable or against public policy, they would be of the same opinion as to small villages organized under the law of 1885, containing entirely different provisions, and not containing the same restrictions tending to protect the public.

An examination of the act of 1895 will show that it is full of prohibitions and restrictions, designed for the protection of public interests against the improvident action of the city council, which are entirely lacking in the village law,—as, for example, the limitations upon the amount of the municipal indebtedness or liabilities; the requirement of a two-thirds vote of the city council to pass any ordinance or resolution appropriating money or creating any liability, or awarding or approving any contract for the payment of money; a three-fourths vote of the city council or a two-thirds vote of the electors to issue city bonds; that franchises and rights over and upon the public streets can only be granted by a three-fourths vote of the city council, and then only to the best bidder, after due advertisement. In short, the whole act of 1895 is full of such limitations and restrictions. A legislative declaration of public policy, if it be such, in the case of populous cities, surrounded by all these safeguards and limitations designed to protect the public, cannot be given any force as a declaration of public policy in the case of small villages, organized under the village law of 1885, providing for a much more simple form of government, and lacking almost all of the safeguards found in the act governing cities.

In conclusion, a word should be added in regard to a matter suggested by defendant's counsel in their application for a reargument. We did not hold in the original opinion, as a hard and fast rule, that in every conceivable case a 30-year contract by a village for a supply of water would be unreasonable and void. There might be exceptional cases where, in view of the extraordinary expense of erecting waterworks, the extreme necessity of a village for a supply of water for fire protection, on account of the character of its business and buildings, and the practical impossibility of otherwise procuring a supply of water in any other way, a 30-year contract would be held reasonable. All that we held was that, upon the facts alleged in the complaint, the contract was at least prima facie unreasonable and against public policy. If there existed in this case

any such exceptional and extraordinary state of facts as would render this contract reasonable, we think it was the duty of the defendant to allege them in an answer, and not of the plaintiff to deny them in his complaint.

For the reasons already given we cannot say that the 30-year provision of the ordinance was legalized by the act of 1893.

Therefore the former opinion is adhered to.