# NORTHERN STATES POWER COMPANY v. CITY OF GRANITE FALLS AND OTHERS.[1]

May 27, 1932.

No. 28,738.

[1]Reported in 242 N. W. 714.

210

*Daly & Barnard,* for appellant.
*A. William Groth* and *Cyrus Erickson,* for respondent.

STONE, J.

Defendant, a city of the fourth class, appeals from a judgment in effect requiring it specifically to perform the contract with plaintiff hereinafter considered.

Plaintiff is a public utility corporation, owning and operating a number of electric generating plants in Minnesota, some depending on steam, others on water power, and some on a combination of both. These plants are largely interconnected. Granite Falls, a city of about 2,000 population and the county seat of Yellow Medicine county, is situated astride the Minnesota river. For years it has owned and operated its own hydroelectric plant, one source of power being a concrete dam across the Minnesota within the city limits. The dam has a normal head of about 14 feet, which has been increased by flash boards.

There is a finding of failure by the city to prove its ownership of the flowage rights necessary to allow it to raise the water above the dam sufficiently to utilize the additional head afforded by the flash boards. Counsel have been unable to agree as to the evidentiary support for that finding, and we put it aside as immaterial to the considerations which must control decision. Another finding objected to by defendant is that, influenced somewhat by the contract in question, plaintiff in September, 1929, commenced construction of a power plant, with a capacity of approximately 20,000 kilowatts and to cost in excess of $2,000,000, within the city limits of Granite Falls. In that connection an invitation extended by numerous citizens of Granite Falls to build the plant within the city is referred to. This finding also may be put aside as without controlling effect. The least that can be said for it from any standpoint is that plaintiff's equities are not lessened thereby. Another

finding which we need not consider, although it has force in plaintiff's favor, is that on or about January 24, 1930, action was taken by the parties modifying somewhat the terms of the contract as to price, which was in effect a ratification.

The power afforded by defendant's dam is utilized through a turbine. The contract recites that the "capacity now being obtained from the present water wheel installation" is 275 horsepower. The city has an auxiliary plant, powered by two Diesel engines, one of 285 and the other of 170 horsepower. It is possible that the protracted deficiency of precipitation, experienced for 12 years by the watershed of the Minnesota river, made these engines the principal and only dependable source of defendant's power until it procured its supply from plaintiff under the contract now in question.

August 9, 1929, plaintiff and defendant entered into the contract which is both source and subject matter of this action. It obligated plaintiff, from August 23 to December 31, 1929, to supply the city with "all electric energy required by reason of breakdown of the city's present generating equipment, or to supply any requirements in excess of that which the city can generate with its present equipment." From January 1, 1930, and during the full period of the contract (14 years from August 1, 1929) plaintiff was to furnish, and the city to "take and pay for all the electric energy required for its use and for the use of its customers, in excess of that which can be generated by its present hydroelectric generating equipment." There is a proviso "that nothing herein contained shall prevent the city from replacing or rebuilding any part or the whole of its present hydro-generating plant equipment * * * up to" the 275 horsepower capacity already referred to.

There is no finding, and no evidence to support a finding, that price or terms of payment are so excessive or otherwise unreasonable as to make the contract questionable. There is no finding and no proof that it was obtained by questionable means. A flat service charge of $700 per month, "plus energy used" at the contract rates, is attacked in argument. But both record and findings are barren of support of that attack.

There having been a change in its personnel, and therewith a change of attitude on the part of a majority of the council, late in January, 1930, action was taken indicating that the city would deliberately breach the contract, and to that end "would start up the Diesel oil engine generating equipment * * * and use the electric energy generated" thereby in lieu of that which plaintiff had contracted to furnish, "all contrary to and in violation of said contract." This action followed. Concerning the nature of the resulting injunction, it is sufficient to say that it is in effect a decree for the specific performance of the contract, the city being enjoined from violating it.

■ The contract required plaintiff to connect its lines with the city's "hydro plant * * * at some point to be designated," where the current was to be delivered and metered. The city was obligated to "grant by ordinance" authority to plaintiff to erect and maintain "over such streets of the city * * * as may be necessary and suitable therefor" the transmission lines and other equipment necessary to enable plaintiff to connect with the city plant. The license given was but incidental to the contract and necessary to enable plaintiff to perform its obligation.

Franchises, in the sense now important, can come only from government; and in a transaction such as this "a municipality does not exercise its legislative functions * * * but only its business or proprietary powers, to which the rules and principles of law applicable to contracts and transactions between individuals apply." Reed v. City of Anoka, 85 Minn. 294, 298, 88 N. W. 981, 982. Plaintiff was not given the right, and does not otherwise possess it, to use streets or alleys to furnish electric energy to inhabitants of the city or other customers outside it. The contract confers on plaintiff no right to deal with or serve the public. Central Wisconsin Power Co. v. Wisconsin T. L. H. & P. Co. 190 Wis. 557, 209 N. W. 755; Griffin v. Oklahoma N. G. Corp. (C. C. A.) 37 F. (2d) 545; City of Des Moines v. Welsbach S. L. Co. (C. C. A.) 188 F. 906. There is present no element of franchise, which is "a special privilege conferred by the government on" a grantee which

does not belong to citizens "generally by common right." 4 McQuillin, Mun. Corp. (2 ed.) § 1739. No franchise being involved, the restrictions in defendant's charter upon its granting of franchises are irrelevant to the present inquiry.

■ G. S. 1923 (1 Mason, 1927) § 1764, expressly authorizes any city with a population of less than 10,000, owning an electric light and power plant, to contract for the purchase of electricity "for the purpose of operating such electric plant, upon such terms as may be approved by a two-thirds vote of all the members of the governing body thereof; provided; that such contract or contracts shall not be made to run for a period exceeding fifteen (15) years." This statute is the efficient legal authority for the contract in question. The city invokes § 1865, id. which in effect prohibits any village or city of the fourth class owning and operating its own waterworks or lighting plant from leasing or abandoning any such plant, or any specific part thereof, except by resolution or ordinance approved by the legal voters of such village or city, by two-thirds vote, at a regular or special election. It is not argued that the contract is a lease, but it is claimed that it contemplates abandonment by the city of some of its plant, and so is void because not submitted to and approved by the electors of the city.

That view of the contract is not tenable. Its expressed purpose is to reserve to the city the right to utilize its hydroplant. The two Diesel engines may be maintained, and possibly it is not going too far to say that it was contemplated that they would be maintained, for stand-by purposes, to be resorted to in case of breakdown or other interruption of the service looked for from the combination of the city turbine and plaintiff's plant.

The contract gave plaintiff the right to suspend delivery of electrical energy at any time "for the purpose of making repairs" or improvements, that privilege being conditioned, "except in the event of inevitable accidents or other causes beyond" control of plaintiff, upon its consulting and agreeing with the "duly authorized representative" of the city as to the time and duration of the interruption of service. Furthermore, it relieved both parties of

obligation for damage arising from interruptions due, wholly or in part, to "fire, explosion, flood, strike or unavoidable accident, federal, state, or municipal interference, or any other cause not reasonably within" their control.

With such contract terms and the imperious modern demand for continuous electric service, it is impossible to argue successfully that the contract is one for abandonment by the city of any part of its power plant.

There is express agreement for continued use of its water power. As to its Diesel engines, it is sufficient that there is nothing requiring it to abandon either of them. That it has the option to dispose of or replace them is immaterial. It is enough that the contract does not require it, even by implication. The contract depends upon the continued maintenance and use and doubtless also upon the extension of the city's transmission lines. We hold therefore that § 1865 has no application, for the simple reason that the contract does not have the effect which the statute aims to prevent, unless with the approval of the electors of the city. The contract antedates the amendment of § 1865 by L. 1931, p. 153, c. 133, Mason, 1931 Supp. § 1865, and so is unaffected thereby. Because of the statutes now controlling, we have no occasion to consider the general principles that otherwise might be applicable and which were discussed in Flynn v. Little Falls E. & W. Co. 74 Minn. 180, 77 N. W. 38, 78 N. W. 106; and Reed v. City of Anoka, 85 Minn. 294, 88 N. W. 981.

■ In view of the express authority for the contract found in G. S. 1923 (1 Mason, 1927) § 1764, there is no unauthorized limitation on the powers of the city or its "successive councils" (under the rule of such cases as Long v. City of Duluth, 49 Minn. 280, 51 N. W. 913, 32 A. S. R. 547) as suggested in argument. For the same reason, there is no support for the city's claim that the contract imposes upon it financial obligation ultra vires or otherwise illegal within the rule of Kiichli v. Minnesota B. E. Co. 58 Minn. 418, 59 N. W. 1088, 49 A. S. R. 523.

Judgment affirmed.

OLSEN, J. took no part.