WHITE *v.* CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—GRAND RAPIDS CHARTER—AUTHORITY OF CITY COMMISSION TO LEASE ELECTRIC LIGHTING PLANT.

Grand Rapids city commission has power to contract to lease its electric lighting plant to private corporation for period of three years, with option of renewal for like period or to sell to lessee if electors so determine, notwithstanding neither authority to consummate contract nor ratification thereof was obtained by vote of electors (1 Comp. Laws 1929, § 2235; Grand Rapids Charter, tit. 8, § 27).

2. SAME—LEASE NOT FRANCHISE.

Contract by which Grand Rapids city commission agreed to lease its electric lighting plant to private corporation for period of three years, with option of renewal for like period or to sell to lessee if electors so determine, is not grant in nature of franchise requiring its submission to vote of electors, but is contract in nature of lease, and such rights as lessee may exercise in streets or public places are merely incident to exercise of its right as lessee (Const., art. 8, §§ 20, 25; Grand Rapids Charter, tit. 8, § 1).

3. SAME—DISTINCTION BETWEEN LEASE AND FRANCHISE.

There is distinction between lease and franchise; lease being contract for possession and profits of property in consideration of rent, and franchise being special privilege granted by government.

4. SAME—FRAUD—SUFFICIENCY OF PROOF.

Claim that contract in nature of lease of electric lighting plant executed by Grand Rapids city commission to private corporation perpetrates fraud upon said city and its taxpayers, *held*, not sustained by proofs.

5. SAME—EXERCISE OF DISCRETION BY CITY OFFICIALS NOT REVIEWABLE.

Exercise of discretion vested in city officials, acting within scope of their power, is not reviewable by courts.

6. SAME—LEASE OF ELECTRIC LIGHTING PLANT NOT REVIEWABLE.
    Contract executed by Grand Rapids city commission, leasing to
        private corporation city's electric lighting plant, which was
        within power of commission to make, is not reviewable by
        court, whether bargain thus made was good or bad.

Appeal from Superior Court of Grand Rapids;
Verdier (Leonard D.), J. Submitted June 22, 1932.
(Docket No. 38, Calendar No. 36,490.) Decided
October 3, 1932.

Bill by James H. White and others against City
of Grand Rapids, a municipal corporation, to de-
clare void a lease of the municipal electric lighting
plant. Bill dismissed. Plaintiffs appeal. Affirmed.

*Wicks, Fuller & Starr,* for plaintiffs.

*Dale Souter* and *Robert S. Tubbs,* for defendant
city and others.

*Travis, Merrick, Johnson & McCobb,* for defend-
ant Consumers Power Company.

NORTH, J. From 1897 to 1931 the city of Grand
Rapids owned and operated a municipal electric
lighting plant. The question arose as to whether
the city could not secure the electricity needed by it
from the Consumers Power Company at a less cost
than it was being produced by the municipality.
After some investigation the city acting through
its commission entered into a contract with the
power company, which contract is designated ex-
hibit 1 in this record. The main provisions in this
contract are thus outlined in the opinion of the
trial judge:

"This contract provides that the city lease its
plant for a term of three years from and after

June 1, 1931, at an annual rental of $86,409 per year, payable semi-annually. The rental is made up of interest and 4 per cent. depreciation on the value of the property, $900,000, and the amount of taxes which the company would be required to pay if it, instead of the city, owned the property. The right is reserved to the city to renew the lease at the end of the three years and for additional three-year periods, not exceeding seven in number. The contract also contains an agreement that the company will purchase the plant at $900,000 less an amount equal to 4 per cent. per annum for the period during which the lease and any renewals thereof have been in effect, at any time the city may desire to sell and when a sale has been approved by the electors as required by law. At the time the contract was made much of the city's lighting system being inadequate, obsolete and inefficient, the company was obligated to make certain replacements, renewals and additions at its own expense, and to do the same during the continuation of the lease, but only to the extent necessary to maintain the property in first-class operating condition; with the safeguard that no unusual or extraordinary replacements or renewals should be made without specific authorization by the city. All property replaced or renewed is required to be turned over to the city for its disposal; replacements and renewals made and paid for by the company, to be the property of the company, but to be purchased by the city at the termination of the contract at cost less 4 per cent. depreciation per annum for the time it has been in service, in case sale of the plant to the company is not made. The rates to be paid the company for street lighting service are the standard rates for such service on file with the Michigan public utilities commission with the proviso that the city shall have the advantage of any lower rates that during the term of the contract may be filed with and approved by said commission.''

Plaintiffs filed this bill of complaint for the purpose of restraining the city and the power company from carrying out the terms of this contract. The relief sought was denied in the superior court of Grand Rapids, and plaintiffs have appealed.

We think it clear that so far as the city has undertaken to bind itself by exhibit 1, it is nothing more than a three-year lease of its municipal lighting plant, with the optional right of renewal for successive periods of three years each and the further option (if the electors of the city decide so to do) of selling the municipal plant to the defendant power company on terms expressed in the contract. As stated by the trial judge:

"It is the specified intent of this contract merely to lease for a trial period so that there may be an actual demonstration of the advisability of a sale."

The first question presented is the right or power of the city to lease its plant. The Grand Rapids city charter was framed under the Michigan home-rule act (1 Comp. Laws 1929, § 2228 *et seq.*), which authorized embodying in city charters the provision:

"For the maintenance, development, operation, *leasing* and disposal of its property subject to any restrictions placed thereupon by law." 1 Comp. Laws 1929, § 2235.

And title 8, § 27, of the city charter reads:

"The city of Grand Rapids shall have and it is hereby given the right and power to acquire, construct, own, operate and maintain * * * waterworks, electric light works, * * * and, to maintain and operate the same or *to lease* the same or any part thereof, to other corporations, or individuals for the purpose of maintenance and operation."

But appellants assert that this power is vested in the electors, not in the city commission. The claim is that since the policy of municipal ownership and operation was initiated by direct action of the electors such policy cannot be changed or abandoned except by like action of the electors. We fail to find from this record that there has been direct action by the electors as to a municipal electric plant except the 1897 ratification of a $125,000 bond issue for the "purpose of purchasing or constructing and operating and maintaining an electric or other lighting plant, for the purpose of supplying the city of Grand Rapids with proper lights." Appellees are not contending that the municipal plant could be sold without approval of the electors; but they urge, and we think correctly, that the provision in this contract for an initial lease of three years and optional power in the city to renew for like periods and the further option to sell at a price specified, if the electors so determine, is not a violation of or inconsistent with the 1897 plan adopted for ownership, operation, and maintenance of a municipal electric plant. Under this contract the city surely continues to own its electric plant. And through its lessee, it also continues to operate and maintain it. The change effected is that the city has now contracted (as its charter provides it may) with the power company to operate the plant for the city and keep it in repair, instead of contracting with or employing individuals to do so. That the city retains at least a large measure of control, notwithstanding its contract with the power company, is clearly indicated by the following provision of exhibit 1:

"It is understood and agreed by the parties hereto that the company shall not make any unnecessary

replacements and renewals to said property, but that only such replacements and renewals shall be made, from time to time, as are required to maintain the property in first-class operating condition and as are essential for the furnishing of proper, adequate and efficient service. If the company deems it advisable to make any unusual or extraordinary replacements or renewals, at any time, the same must be specifically authorized by the city.''

We fail to find such a departure from a policy of municipal ownership, adopted by the electors, even if its approval of the 1897 bond issue is so construed, as renders the contract, exhibit 1, invalid or beyond the power of the city commission to consummate, notwithstanding neither authority to consummate the contract nor ratification thereof was obtained by a vote of the electors. This holding is also justified by the record, from which it clearly appears that by the method adopted the city commission is making a good-faith effort to ascertain whether it will be more economical to purchase electric current from the power company or to continue to operate its plant as in former years. In this particular the instant case is clearly distinguishable from *George* v. *Wyandotte Electric Light Co.*, 105 Mich. 1.

Appellants further claim that under this contract the power company is in effect operating under a right of franchise in violation of law because the company's right to so operate has not been submitted to a vote of the electors as required by constitutional (Michigan Constitution, article 8, §§ 20, 25) and charter provisions (title 8, § 1). In this connection, the power company, which for years prior to the consummation of exhibit 1 had been furnishing electric light and power to private con-

sumers in Grand Rapids, claims that it has a general franchise covering its operations in that city. Testimony was given to that effect and the record seems· to contain no evidence contravening this claim. Also see *City of Grand Rapids* v. *Consumers Power Co.,* 218 Mich. 414. But entirely aside from the above considerations, we are of the opinion that the fair and reasonable construction of exhibit 1 is that at most it is only a contract in the nature of a lease under which the Consumers Power Company is to operate the city's electric light plant for a period of three years, with optional provisions to the city to continue such operation for successive periods of three years each, and with a further option for the sale of the plant to the Consumers Power Company if the Grand Rapids electors so determine. Under exhibit 1 the power company acquired no vested rights except those of a lessee for the first three-year term. If it extends the scope of the present municipal plant, the city has the option of taking over such additions, extensions, improvements, or replacements at cost less depreciation. Such rights as the power company may exercise in the streets or public places in the city or such local business as it may transact therein are merely incidents to the exercise of its rights as lessee under exhibit 1.

"There is a distinction between a lease and a franchise, a lease being a contract for the possession and profits of property in consideration of a rent, and a franchise being a special privilege, granted by the government." 26 C. J. p. 1018.

See, also, *City of New York* v. *Interborough Rapid Transit Co.,* 53 Misc. Rep. 126 (104 N. Y. Supp. 157); *City of Des Moines* v. *Welsbach Street Lighting Co.,* 110 C. C. A. 540 (188 Fed. 906); *Northern*

*States Power Co.* v. *City of Granite Falls,* 186 Minn. 209 (242 N. W. 714).

While one can readily conceive of a bad-faith attempt being made by this or a similar method to evade the requirements of the law relative to securing a franchise, we are not here concerned with such an issue, because, as hereinafter noted, such a claim is not sustained by this record. Our conclusion is that consummation of the contract, exhibit 1, did not amount to granting a franchise to the power company and that it was not necessary that a franchise should be granted to it to enable it to operate as a lessee under this contract.

Appellants have also stressed the claim that this contract, exhibit 1, operates as and perpetrates a fraud upon the city of Grand Rapids and upon its taxpayers and electors. Again careful consideration of this record convinces us that appellants' claim along this line is without merit. In disposing of this phase of the case we content ourselves with quoting with approval the following from the opinion of the trial judge:

"We come now to the final claim: that this contract operates as a fraud upon the taxpayers of the city. Plaintiffs assert more than they prove, that the city commission was duped into agreeing to pay the power company for light furnished the standard street lighting rates on file with the Michigan public utilities commission, that said standard rates are based on the theory that the utility permitted to use them is, itself, the owner of the plant, and that the rate structure, therefore, includes interest on invested capital, depreciation, taxes and profits as well as cost of current and distribution; that consequently such rates are exorbitant when applied to this situation where the company has no invested capital in and no ownership of the plant.

"Plaintiffs forget that the rental charged by the city is made up of a charge for interest on the value of the plant (invested capital), depreciation and taxes which the company would be required to pay if it owned the property. Plaintiffs also overlook the clause in the contract which grants to the city any advantage of any lowering of rates that may be approved by the Michigan public utilities commission. But the main thing plaintiffs forget is the principle of law so often approved by our Supreme Court, that the discretion vested in city officials is not subject to review by the courts. If they transcend their power, the courts may interfere. But if, acting within the scope of their power, they make mistakes, it is not the business of a court to amend or correct their errors.

"It is my conclusion that the city commission had the power to make this contract. Whether they made a good bargain, or a bad one, is none of the court's business. But if the careful estimates of comparative costs between municipal operation and private operation are even approximately correct, it is probable that the contract is quite advantageous to the city."

The decree entered in the trial court is affirmed, with costs to appellees.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.