CITY OF GRAND RAPIDS *v.* CONSUMERS POWER CO.

1. ELECTRICITY—ORDINANCES—RATES ADVERTISED BY COMPANY NOT
CONTROLLING.

Where the common council of the city of Grand Rapids
passed an ordinance for the regulation of an electric light
and power company, which was ratified by the electors
and accepted by the company, the rates provided therein
are controlling rather than the rates published in the
newspapers by the company prior to the vote on said
ordinance by the electors; there being no reference in the
ballots which were voted to the advertisements which ap-
peared in the papers.

2. SAME—WAIVER OF RIGHT TO CHARGE RATES PROVIDED IN ORDI-
NANCE.

The electric light and power company, by putting into
effect the rates as advertised by it, and continuing same
for many years, did not waive its right to at any time,
within the life of the ordinance, charge the maximum
rates authorized therein, although higher than the rates
as so advertised.

Appeal from superior court of Grand Rapids (Dun-
ham, Major L.), J.    Submitted January 18, 1922.
(Docket No. 101.)    Decided June 5, 1922.

Bill by the city of Grand Rapids against the Con-
sumers Power Company to enjoin the charging and
collecting of certain rates.    From a decree dismissing
the bill, plaintiff appeals.    Affirmed.

*Ganson Taggart,* for plaintiff.

*George Mechem,* for defendant.

MOORE, J.    The chancellor who heard this case in
the court below filed a carefully prepared written
opinion, from which we quote freely as follows:

On right to raise rates of public service corporation fixed by
franchise, see note in L. R. A. 1915C, 287.

On power of municipality apart from contract to regulate the
rates to be charged by public service corporations, see notes in
33 L. R. A. (N. S.) 759; 43 L. R. A. (N. S.) 994.

"This is an action brought by the plaintiff to restrain defendant from charging and collecting rates as provided in an ordinance of this city adopted by the common council thereof on July 29, 1907, entitled as follows:

" 'An ordinance to regulate and control the exercise by the Grand Rapids-Muskegon Power Company in the streets and public places of the city of Grand Rapids of the franchise of transmitting and distributing electricity for light, heat and power as provided by section 7, title 4 of the charter of said city and to approve of the location and designation in such streets and public places of the lines of conduits, poles, wires and other conductors and appliances necessary therefor.'

"Defendant claims this ordinance authorizes such charges. The facts upon which each party hereto bases its claim are substantially as follows:

"The Grand Rapids-Muskegon Power Company, mentioned in said ordinance, acquired its corporate franchise under the laws of the State of Maine on November 12, 1904, and was admitted to do business in this city under Act No. 206 of the Public Acts of this State for the year 1901 on December 19th of that year. Between its authorization to do business in this city, and the year 1907 it had expended large sums of money to enable it to produce and supply electricity for the purpose of light, heat and power and including construction of lines for the transmission of the same.

"On March 18, 1907, the Muskegon Power Company took up the matter of obtaining a franchise from plaintiff to do business in this city and sent a communication to that effect by its vice-president, W. A. Foote. * * * Such negotiations were had between said power company and said common council that the ordinance in question was introduced in said common council on July 15, 1907, and adopted as it now reads on July 29, 1907. It was duly accepted by said power company on August 5, 1907. Thereafter a petition was filed to submit said ordinance to referendum under section 2, title 4 of said city charter. In compliance therewith said council submitted said question at an election held on the 17th day of September, 1907. * * * The result was 5,157 votes in its favor and 3,470 against it. After the canvass of this

vote said common council declared said ordinance adopted. * * *

"On August 17, 1907, said Grand Rapids-Muskegon Power Company caused to be published in the several papers in said city the following advertisement:

"'Grand Rapids Press, Saturday, August 17, 1907.

"'Electric Light and Power. The following reduced rates to take effect October 1, 1907. Reduced schedule of rates for light and power to take effect October 1, 1907.

"'Lighting. * * * Power * * *

"'A minimum charge of $1 per month will be made to each individual power customer. Ten per cent. will be added to all light and power bills not paid by the 15th of the month following.

"'GRAND RAPIDS-MUSKEGON POWER COMPANY.

"'GRAND RAPIDS-EDISON COMPANY.'

"The Muskegon and Edison companies signed this advertisement and both accepted the ordinance, and subsequently all rights in and property of these utility companies were acquired by defendant. * * *

"In November, 1908, defendant put into effect certain rates to new customers, different from those stated above as shown in said advertisement, but which rates were less than those that defendant was authorized to charge in said ordinance of July 29th, as to new customers. These rates were continued in effect until sometime in 1910 when complaint was made by certain city officials claiming an unjust discrimination between the old and new consumers of electricity, and by reason of such complaint defendant discontinued such discriminatory rates and put all consumers on the rates as advertised in August, 1907, and as set out above. * * *

"From October 1, 1907, until December, 1920, the advertised rates continued to be the uniform rates charged by the defendant to its customers, with the exception of said discriminatory rates above mentioned, and whatever other charge was made in excess thereof, if any, between November, 1918, and January 20, 1919. It does not clearly appear by either the pleadings or proof in the case what such increased rates were, if any. It does appear, however, that on November 29, 1918, defendant notified the city commission that it desired to increase the rates charged as follows: 8 cts. per K. W. for the first 60 hours use

of connected load, 6 cts. per K. W. for the next 60 hours use of connected load, and 4 cts. per K. W. for all current used thereafter.    Plaintiff at that time denied defendant the right to charge any amount in excess of said published rates, and defendant then withdrew its claim for such increased rates and such notice from plaintiff was to the further effect that if defendant did not withdraw its increased rates that the city commission would reduce the rate of fare charged on the Grand Rapids street railway, and plaintiff claims that any excess collected by defendant at the rates last above stated were refunded to the persons, firms, or corporations paying such increased rates over said advertised rates of 1907.    Plaintiff claims and defendant admits that on more than one occasion defendant has received notice from said city commission that it could not raise rates without the consent of such commission.

"About July 15, 1920, defendant presented a communication to said city commission asking authority to make a temporary increase in rates, a copy of which communication is attached to defendant's answer marked Exhibit D, but is too long to include here.    In compliance with such communication, this application was referred to Fred H. Locke, city manager, and George E. Ellis, commissioner, as a special committee who reported at the meeting of said commission held September 9, 1920, in effect that a temporary increase in defendant's rates should be permitted and that an ordinance be drafted to that effect and in conformity with such report. On September 16, 1920, an ordinance was reported purporting to fix rates of increase as shown by such ordinance." * * *

The defendant declined to accept this ordinance. We again quote:

"This ordinance was then amended by the said city commission so that section 2 reads as follows:

" 'This ordinance is an emergency measure subject to revocation at any time by the city commission and the consent, permission and authority hereby given and granted shall continue only so long as this ordinance shall remain unrevoked and in force.'

218 Mich.—27.

"Section 4 was stricken out and section 5 was made section 4 and amended to read as follows:

"'The rights contained in this ordinance shall under no circumstances be construed as extending the life of the original franchise grant under which said company is now operating, but as expressly recognizing the said franchise and the several conditions therein contained other than as herein expressly modified.'

"With a few other slight and unimportant changes the ordinance was adopted by said city commission on November 4, 1920, and was thereafter accepted by and acted upon by the said defendant.    *    *    *

"The main question in this case is whether, under the above state of facts, defendant is bound until the expiration of its charter in 1927 by the rates advertised by the Grand Rapids-Muskegon Power Company on August 17, 1907, in the Grand Rapids Press, which were by the advertisement to take effect on October 1, 1907, and fully set out in paragraph 6 of plaintiff's bill.

"Was the ordinance of July 29, 1907, a franchise, or was it an ordinance regulating the use of the franchise acquired by said Muskegon Power Company under and by virtue of Act No. 264 of the Public Acts of this State for the year 1905?

"This power company as already stated, received its corporate franchise under the laws of the State of Maine on November 12, 1904, authorizing it to manufacture, sell and distribute electrical current for lighting and power purposes. By complying with Act No. 206 of the Public Acts of 1901 of this State the Muskegon Power Company was authorized to conduct its business in the city and elsewhere of distributing its electrical current, and it was so lawfully engaged in this city on July 15, 1907, and prior and subsequent thereto. The Muskegon Power Company in 1907 was not dependent upon authority from the common council of the city of Grand Rapids for the right to use its streets for the purpose of promoting and carrying on its public utility, that of furnishing electricity. This right said power company had acquired from the State in 1905. Plaintiff could not have prevented the use of such streets by said power company if it had

desired so to do. This right on the part of the
Muskegon Power Company by said Act No. 264 was
restricted in its use of said streets so as not to in-
juriously interfere with other public uses thereof, and
the further restriction that the city had the power to
make all reasonable rules for the location of all lines
of poles and wires for the distribution of such elec-
trical current. Further than this, plaintiff had no
authority to interfere with the defendant in the exer-
cise of its utility.

"Plaintiff, with the intention of exercising its right
under said Act No. 264 adopted the ordinance of July
29, 1907. I do not think that it is at all important
to determine whether this ordinance is a primary or
secondary franchise, or whether it is a franchise at
all in the strict construction of that term. The crea-
tion of the corporation, the Grand Rapids-Muskegon
Power Company, was a franchise. It was purely the
creature of the statute, and such rights as were given
it by the ordinance just mentioned, so far as placing
poles, etc., are concerned as additional rights are often
called 'franchises,' but perhaps should more properly
be termed 'powers.'

"The only significance, if any, in determining
whether the ordinance of July 29, 1907, is a franchise
or a regulatory ordinance is by reason of section 2
of title 4 of the city charter, in force at the time said
ordinance was adopted, reading as follows:

" 'No franchise, whether an original grant, extension or amend-
ment, shall become operative, where a petition is filed with the
city clerk within 30 days after the first publication of the ordi-
nance granting the same, signed by not less than 12 per cent.
of the qualified voters of the city as shown by the vote at the
last preceding general city election asking for submission of
the question of granting such franchise to popular vote, until
such franchise shall be so submitted at a regular election or
special election called for that purpose and approved by a major-
ity of the electors voting thereon.

" 'No grantee of a franchise or a privilege shall be entitled
to assign or sublet the same or allow any other to use the same
without the consent of the city by ordinance duly passed which
ordinance shall be subject to the referendum provided for in this
paragraph.'

"Defendant contends that the said ordinance of July 29th is not a franchise entitling a referendum thereon. Plaintiff claims it is.

"Act No. 264 of the Public Acts of 1905 contains this language:

"'The designation and location of all lines of poles and wires shall be subject to the regulation, direction and approval of the common council of cities,' etc.

"After the adoption of said ordinance and within the time mentioned in said section 2, title 4 of said city charter, a petition was filed with the city clerk signed by more than 12 per cent. of the qualified voters of said city as shown by the vote at the last preceding general election, asking for the submission of the granting of such franchise at a popular vote. Assuming now that said ordinance was a franchise within the meaning of said section 2, of title 4, the said ordinance of July 29, 1907, was not operative until the votes of September 17, 1907, on said referendum was canvassed declaring said ordinance approved, nor until 42 days after its adoption and first publication thereof, nor unless accepted by both companies within said 42 days.

"The language of section 2 is that:

"'No franchise, etc., shall become operative until approved by a majority of the electors voting thereon.'

"The form of ballot that was used by the voters on this referendum was as follows:

"'Shall an ordinance to regulate and control the exercise of the Grand Rapids-Muskegon Power Company in the streets and public places of the city of Grand Rapids * * * passed by the common council on the 29th day of July, 1907, be approved?'

"The referendum related to the ordinance of July 29, 1907, only. It was so stated upon the face of the ballot.

"I have already stated the title of the ordinance. Plaintiff strenuously contends that this ordinance was a franchise. Defendant as strenuously denies that it is. Plaintiff contends that to make it operative a referendum was required upon the filing of the petition mentioned in said section 2, title 4 of said

city charter. Defendant claims that it was not subject to a referendum vote; that such vote was a mere straw vote. Defendant claims the ordinance was a regulatory one merely and contains none of the elements of a franchise; that the right and privilege of the Muskegon 'Power Company was granted by said Act No. 264 of the laws of 1905; that neither the right nor privilege to occupy the streets of said city was contained in said ordinance, but by which plaintiff had the right to the regulation given it by said act.

"The statute in question authorizes plaintiff to regulate and control, and section 7, title 4 of the charter of this city in force in 1907 provided in part as follows:

" 'The common council shall have the power to regulate and control the exercise by any corporation of any franchise exercised on, in and over the streets and public places of the city, whether such franchise has been granted by the city or by and under the laws of Michigan.'

"I have no doubt that the ordinance was passed for the purpose of regulating the exercise by the Muskegon Power Company of the rights granted to it by said Act No. 264. Said section 7 provides that the common council shall have the power to regulate and control the exercise by any corporation of any franchise exercised on, etc., but the Muskegon Power Company in July, 1907, had no franchise and no purported franchise from the plaintiff. I am inclined to adopt the contention of the defendant upon this proposition. Said Act No. 264 granted to plaintiff the power to regulate the exercise of the franchise that the Muskegon Power Company then had. I am led to the conclusion that the ordinance in question was not the granting of any such rights, powers, and privileges that constituted a franchise in the sense used in paragraph 2, title 4 of said charter that required a referendum to make it effective. Said Act No. 264 uses this language:

" 'That the designation and location of all lines of poles and wires shall be subject to' the regulation, direction and approval of the common council of cities.'

"The power to designate and locate was not left to the determination of the voters of the city of Grand Rapids. That authority was specifically delegated to the common council.

"Local Act No. 593, passed by the legislature of this State in 1905 and approved June 6th of that year, which act constituted the charter of the city of Grand Rapids, and section 7 of title 4 of said act, is as follows:

"'The common council shall have the power to regulate and control the exercise by any corporation of any franchise,' etc.

"This section of the charter was in force in July, 1907. By the terms of said Act No. 264 and the city charter the power to regulate and control the exercise by these utility companies of their franchise rights in the public streets of this city was vested in the common council and not in the voters. I am of the opinion that on the morning of September 9, 1907, the Muskegon Power Company had a right to locate its poles, etc., in accordance with such ordnance.

"By reason of the publication of August 17, 1907, are the rates then published substituted for the rates provided in section 13 of said ordinance? This is an important question here and one that is affirmed by plaintiff and denied by defendant. If plaintiff's contention is true, then the ordinance in question did not become effective as an ordinance until after the 17th day of September, 1907. If defendant's contention is true it was a valid ordinance on July 29th and operative September 9, 1907. The publication of the newspaper articles was after the adoption of said ordinance and before it became effective upon plaintiff's theory. Upon defendant's theory the publication in question could not be received in evidence to change or modify said ordinance because of its incompetency for that purpose.

"How does it affect the ordinance upon plaintiff's theory? By the ordinance, maximum rates only were adopted. Any rate could be fixed by the Muskegon Power Company from nothing to the maximum rate. In the publication in question, the advertisement stated that beginning with October 1, 1907, the rates therein stated would be put in force. There was no time limit stated in that advertisement.

"Plaintiff contends that defendant is bound to use those rates and no other until the expiration of defendant's charter unless permission to do so is granted it by said city commission. Defendant contends that it was, in no event, bound to continue them longer than a reasonable time for the purpose of determining whether such rates were reasonable and equitable to both producer and consumer. There is no proof that a single voter voted 'Yes' upon the referendum in question by reason of such advertisement.

"Plaintiff contends in effect that said referendum would have been defeated had it not been for such advertisement. Defendant contends that the affirmative vote was in the majority because the consumers in the city of Grand Rapids were desirous of having the Muskegon Power Company furnish its electrical current in addition to the electrical current that was then being furnished by the Edison Company. There is no proof that those who voted in favor of said referendum did so because of their desire for the services of the Muskegon Power Company. I do not think the subject of the motive of why the votes were cast as they were on the 17th day of September, 1907, is one open to inquiry here. *People* v. *Gardner*, 143 Mich. 104; *Angle* v. *Railway Co.*, 151 U. S. 1, (14 Sup. Ct. 240) ; *Soon Hing* v. *Crowley*, 113 U. S. 703 (5 Sup. Ct. 730). In my judgment the referendum was advisory only. The voters were not voting on the prices stated in said advertisement. They were voting to approve and for the purpose of having made effective, not the matter stated in said advertisement, but upon the ordinance as a whole, including the rates mentioned in section 13 thereof. This the voters knew, or they should have known, because the ballot plainly so stated and upon this proposition I differ with the attorney for plaintiff upon the construction of *Township of Zilwaukee* v. *Railway Co.*, 213 Mich. 61, in that it has no application here. Upon this theory, the contract between the city and the Grand Rapids-Muskegon Power Company, as made and adopted by the common council on July 29, 1907, did not become effective until September 18, 1907, or thereabouts, and such publication was on August 17, 1907.

"The ordinance of July 29, 1907, under considera-

tion was plain and free from any ambiguity, and it was just as free from any ambiguity as the vote on September 17, 1907. From the nature of the contract itself, I refer now to the ordinance of July 29, 1907, I do not think that such published rates could modify the terms of said ordinance. If so, it was a modification of that ordinance which counsel for plaintiff claims to be a franchise, and the section of the city charter that is invoked by counsel for relator is as follows (I refer now to section 2, title 4 of the charter in force in this city in July, 1907):

" 'No franchise, whether an original grant, extension or amendment shall become operative where a petition is filed with the city clerk within 30 days after the first publication of the ordinance granting the same,' etc.

"If the rates published by the Muskegon Power Company on August 17, 1907, became effective as plaintiff claims, it was an amendment of and substitution for section 13 of said ordinance. Such published rates were carried by the Muskegon Power Company and by defendant for a reasonable length of time and defendant was not bound to continue them longer.

"Have the acts of the Grand Rapids-Muskegon Power Company and the defendant here, or the acts of either of such corporations, estopped defendant from relying upon and enforcing paragraph 13 of said ordinance? Plaintiff grounds its claims of estoppel upon the following conduct of said corporations:

"*First:* By reason of such publication itself.

"*Second:* Because the Muskegon Power Company and the defendant charged and collected only such rates for some time after October 1, 1907.

"*Third:* Because the Grand Rapids-Muskegon Power Company made an offer which the people by their vote accepted and which vote bound said Muskegon Power Company and defendant to the expiration of the charter of said defendant.

"*Fourth:* Because said Muskegon Power Company sought to increase the rates as advertised to new customers which were discontinued upon complaint of the common council of said city and ceased to charge such rates, returning to and charging such new customers the rates it advertised, and refunded all such collections made in excess of such amounts.

*"Fifth:* That on November 29, 1918, the defendant here sought to increase its rates over said published rates and which right was denied by plaintiff, and defendant here then withdrew its claim for increased rates and those which had been collected in excess of such published rates were refunded.

*"Sixth:* For the further reason that on July 15, 1920, defendant petitioned the city commission of said city to allow a temporary increase in its light and power rates. This increase was allowed and an ordinance for such allowance was introduced for said city commission on September 10, 1920, and the same was duly passed on November 4, 1920.

*"Seventh:* Plaintiff also, as one of its grounds of estoppel, charges that defendant having accepted and acted under the ordinance of November 4, 1920, that it has waived the right and is estopped and barred during the term of said ordinance from charging any rate in excess of those thus permitted.

"Upon all these reasons so assigned by plaintiff, defendant takes issue. I will consider these reasons in the order just stated. I have already substantially disposed of the first one.

"In addition to what I have already said, it will be further noticed that the publication of the rates on August 17, 1907, did not state how long the rates were to continue. They were to be put in effect on October 1st following. No formal assent thereto was given by the common council of said city. The rates as therein stated were not voted upon, even if such vote was of any significance as affecting the ordinance in question. I do not think it had such effect. The common council of said city must have understood on April 28, 1910, that the Muskegon Power Company had not intended and did not then intend that such published rates were to be permanent. Prior to that date as to new subscribers the rates had been increased. Upon complaint of said common council such rates were reduced to make them uniform and to prevent discrimination therein.

"On said April 28th a communication was sent to said common council stating in part as follows:

" 'However, to meet your views and to correct the matter of discrimination, we will on May 1st next, establish the rate of October 1, 1907, to all customers, and will give it a fair trial, frankly stating, however, that if experience still further demon-

strates that this rate is too low, a new schedule of classified rates will be prepared based on what is considered to be wise and necessary at the time; but no change in rates will be put into effect without due and proper notice to all interested parties.'

"More significant still is that defendant had never considered such published rates as permanent.

"We have the amended ordinance increasing rates which was asked for by defendant on or about the 15th day of July, 1920, and an ordinance in compliance therewith was passed by the city commission of said city on September 27, 1920, section 2 of which ordinance was as follows:

" 'This ordinance is an emergency measure, subject to revocation at any time by the city commission, and the consent, permission and authority hereby given and granted shall continue only so long as this ordinance shall remain unrevoked and in force, and upon revocation the right to charge any rate in excess of the rates fixed under the existing franchise as construed and amplified by publication at the time of its adoption by the people, shall cease.'

"The publication referred to therein was the one of August 17, 1907.

"Section 4 of this ordinance was as follows:

" 'It is understood and the company in accepting the terms of this ordinance, expressly agrees that it shall be and is bound by the rates as published when its franchise was submitted on referendum to the people, insofar as the same are other or different from the rates fixed in said franchise upon and after the revocation of this ordinance as herein provided.'

"This ordinance so far as sections 2 and 4 thereof were concerned was rejected by defendant, and which opposition thereto was made manifest to said city commission on October 18, 1920, in a communication by defendant to said city commission, reading in part as follows:

" 'While we are desirous of meeting the views of your honorable body, we cannot accept in its present form the ordinance authorizing us to temporarily increase our commercial lighting and power rates. The rates as incorporated in the ordinance are the compromised rates as the company understood them, but the stipulation in the ordinance that if it is repealed the com-

pany will be legally bound by rates other than those provided for in the regulating ordinance, makes it impossible for us to accept it.

" 'The rates established in 1907 were based entirely on the 1907 costs and it would not be fair and equitable to return to these rates until the 1907 costs again obtain. We would, however, be willing to accept the ordinance with a clause inserted therein that if the temporary rates are repealed the company would then agree to charge for the remainder of the 20-year period provided for in the regulating ordinance of 1907, not exceeding the following rates for residential lighting.'

"Said city commission, acting upon this communication, amended said ordinance, striking therefrom the features objectionable to defendant and entered into a new contract as to rates mentioned therein with defendant, by passing such amended ordinance on November 4, 1920, substituting for said objectionable section 2 the following as section 2 of the ordinance as passed on said last mentioned date:

" 'This ordinance is an emergency measure, subject to revocation at any time by the city commission, and the consent, permission and authority hereby given and granted shall continue only so long as this ordinance shall remain unrevoked and in force.'

"Said objectionable section 4 of said ordinance was entirely eliminated. It, therefore, clearly appears that defendant refused to be bound to return to the said advertised rates when this last contract and ordinance was repealed and revoked. Understanding this, and in compliance with defendant's expressed desires, plaintiff made the contract of said November 4, 1920. Understanding that when it should repeal said ordinance that defendant was not bound by the advertised rates, but did understand that defendant would not accept that or any other ordinance unless it was permitted to return, if it so desired, to the charges stated in section 13 of said regulating ordinance of 1907. I do not think plaintiff's contention can be sustained because the Muskegon Power Company and its successor, this defendant, charged and collected rates for some time in accordance with those advertised to be put into effect in October, 1907, by said Muskegon Power Company.

"I do not think the third reason above stated is tenable. I do not understand that the people by their vote accepted the rates so advertised. Some of the voters probably knew, it is not at all likely that they all knew, that the Muskegon Power Company had offered to put in force the rates it advertised it would put into effect October 1, 1907.

"Plaintiff's next reason is based upon the fact that at one time the Muskegon Power Company sought to increase its rates as advertised to new customers. These rates were discontinued. They were discontinued because discriminatory. The mere fact that said Muskegon Power Company charged all its consumers the rates as advertised and refunded whatever it had collected in excess of such amounts to said new subscribers, I do not think did or could have the effect of estopping this defendant from increasing its rates at any time uniformly up to the maximum stated in said regulating ordinance.

"The fifth reason assigned by plaintiff as grounds of estoppel I do not think is effective for that purpose. Defendant desired on November 29, 1918, to increase its rates. Plaintiff objected thereto and defendant thereupon withdrew its claim for such increased rates at that time.

"The sixth and seventh reasons assigned for such estoppel is, in effect, that on July 15, 1920, defendant petitioned said city commission for a temporary increase in its light and power rates. Such rates were allowed by an ordinance adopted November 4, 1920.

"Plaintiff states its seventh reason for estoppel in the following language:

"'Defendant having accepted and acted under the ordinance passed November 4, 1920, and derived the benefit therefrom has waived the right and is estopped and barred during the term of said ordinance from charging any rates in excess of those thus permitted.'

"I am not able to follow plaintiff's counsel in this reasoning. It does appear that on various occasions the Muskegon Power Company and defendant applied to the common council of the city of Grand Rapids and to its city commission for permission to increase rates in respect to some of its charges, and particularly in

July, 1920, it asked permission of the said city commission to charge a rate higher than said advertised rates and higher than the maximum rate authorized by said ordinance. In asking that permission I do not believe defendant or said Muskegon Power Company waived any of its actual rights under said ordinance. The fact that defendant in July, 1920, asked for an increase in some of its rates, and which increase was thought reasonable by said city commission, and so believing by ordinance adopted on November 4, 1920, permitted such increase. This increase was continued by defendant until the revocation or repeal of that ordinance on the 10th day of March, 1921.

"The ordinance of November 4th did not go into effect until December 4, 1920. The ordinance of March 10th did not take effect until April 10, 1921. It is now plaintiff's claim and by reason of the passage of said ordinance of November 4, 1920, and the fact that the increase permitted thereby was charged by defendant, and notwithstanding its repeal on March 10, 1921, that now defendant is estopped and barred from charging any rates in excess of those thus permitted. Again I say I must admit I do not understand plaintiff's reason for such claim. If plaintiff had the right to permit the increase by the ordinance of November 4, 1920, and then revokes the same, how can it claim any binding effect upon defendant by reason thereof? I think this claim of waiver and estoppel on the part of plaintiff for this reason is of no force.

"The rates permitted to be charged by this ordinance of November 4th were in excess of said advertised rates and were in excess of the maximum rates fixed by said ordinance of July 29, 1907. If upon this proposition plaintiff is right, I do not quite understand why plaintiff provided in section 2 in its ordinance of November 4, 1920, in the first instance the following clause:

" 'This ordinance shall continue only so long as it shall remain unrevoked and in force and upon revocation the right to charge any rate in excess of the rates fixed under the existing franchise as construed and amplified by publication at the time of its adoption by the people, shall cease.'

"Up to this time plaintiff must have believed that defendant had the right to return to the rates as fixed in section 13 of said ordinance. In passing the ordinance that was finally adopted on November 4, 1920, it attempted in the first instance to effectually cut off this right. Defendant in my judgment has not waived any of its rights or is now estopped from returning to and charging the rates as fixed in said section 13 of the ordinance of 1907.

"The specific relief prayed for in plaintiff's bill is as follows, briefly stated:

" 'That defendant be restrained and enjoined from demanding, taking or collecting from its consumers in the city of Grand Rapids any sum in excess of the published rates of August 17, 1907, for power; and restrained and enjoined from cutting off its electrical current from any of its consumers or interfering with their use thereof because of refusal on their part, or any of them, to pay an amount over the rates as published and permitted as stated in said bill of complaint; that defendant be required to account for and pay over to any person, firm or corporation any and all amounts it has collected or shall hereafter collect in excess of the rates published for current used.'

"It is my judgment that plaintiff is not entitled to any of the relief thus prayed for. I am still further of the opinion that the method adopted by the defendant in putting its rates into effect under the ordinance of November 4, 1920, and its readjusting its rates upon the repeal of said ordinance by said plaintiff are just and equitable and that plaintiff is entitled to no relief by reason thereof.

"I have read the cases cited by counsel for plaintiff upon every proposition contended for, but by reason of the length of this opinion I will not attempt to state wherein they differ in principle from the case under consideration in my judgment, nor why they are not controlling upon any of the main questions involved in this controversy.

"For these reasons plaintiff's bill of complaint must be dismissed with costs. Counsel for defendant may prepare a decree in conformity with this opinion."

The case is brought here by appeal.

We cannot state the contention of the city better than to quote from the brief filed in its behalf:

"The principal issue in this case is whether after a franchise ordinance has been passed by the city council, and to secure a favorable vote on the referendum thereon, the company has published certain rates more favorable to the consumers than the maximum of those granted by the franchise, they are bound by such published rates. * * *

"It is our contention that the obligations assumed by the Grand Rapids-Muskegon Power Company in the advertisement of these rates and the inducement thus held out to the citizens of Grand Rapids to approve the franchise by the ballot, was more than a moral obligation. See *City of Saginaw* v. *Consumers Power Co.*, 213 Mich. 460. It was an offer made by the company and in such terms as they deemed proper. Had they desired to limit it to a certain period; had they desired to make it subject to termination at any time; had they in fact desired to in any way qualify it, it was within their power to do so, and they alone could do it, as they alone made the offer. Not having so limited it, it is our contention that it was for the life of the franchise, in connection with which the advertisement was inserted. * * *

"It is not the contention of the city as before stated, and it does not seek to modify or change the franchise contract by prior or contemporaneous evidence, rather the position of the city is that after having been granted this franchise by the then common council and having knowledge that the same was about to be submitted to a referendum vote, the Grand Rapids-Muskegon Power Company sought by every means in its power to secure a favorable vote, and as one of the most potent arguments to that end, advertised and promised the rates in question, thereby holding out to the people that a vote for the franchise would result in a vote for the rates as advertised. * * *

"The franchise, the advertisements, the referendum followed by the inauguration of the advertised rates for many years, are admitted. As between individuals the question would be a simple one. The company made an offer which the people by their vote accepted. For how long a period is the company

bound? The answer claims for a reasonable time only. We claim for the life of the contract, as the company had within its power to have limited the period, which in its wisdom it did not do."

We do not deem it necessary to add very much to what was so ably said by the chancellor in the opinion, from which we have quoted. We think it a complete answer to the contention of the city that there is no reference whatever in the ballots which were voted to the advertisements which appeared in the papers. The vote was upon the proposition of whether the ordinance of July 29, 1907, should be approved. As already shown it was approved.

We think the decree of the court below should be affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.